## Axe Science Corporation Tax Appeal.

Argued April 5, 1972, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

104

*David H. Rosenbluth,* with him *Louis G. Rigby* and *Stradley, Ronon, Stevens & Young,* Of Counsel, for appellant.

*George W. Keitel,* Deputy Attorney General, for appellee.

OPINION BY JUDGE BLATT, July 13, 1972:

The appellant is a Delaware corporation, taxable in Pennsylvania as a regulated investment company, and it paid a foreign franchise tax for the calendar year ending December 31, 1968 at the rate of five mills. The Department of Revenue (Department) settled the tax at a six mills rate, however, and refused the appellant's request for a resettlement. This refusal was affirmed by the Board of Finance and Revenue (Board), and it is this action which is now appealed to this Court.

There appears to be only one question at issue: Did the Act of December 29, 1967, P. L. 896 (Act No. 406), which amended the Pennsylvania Capital Stock and Franchise Tax Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871 (Franchise Tax Act), raise the tax rate applicable to the appellant for the calendar year of 1968 from five mills to six mills or not?

It should be noted that subsequent legislation[1] again amended the tax rate for the period following December 31, 1968, and its terms will be discussed later for

---

[1] Act of July 31, 1968, P. L. , No. 277, §1, and Act of December 31, 1969, P. L. 419, §1. (This section was repealed by the Act of March 4, 1971, P. L. , No. 2, Art. VI, §605.)

their bearing upon the question here involved. We are concerned here, however, only with tax due and payable for 1968.

The purpose of Act No. 406, as stated in its title, was "increasing the tentative and annual capital stock and franchise tax on domestic and foreign corporations. . . ." In the text of the Act as finally approved by the General Assembly and signed by the Governor, the tax rate listed throughout Section 21, and specifically in Section 21(f), was changed from five mills to six mills in each instance where a rate was specified except in paragraph 2 of the subsection where the rate remained unchanged at five mills. Noting what seemed to him to be an inadverent discrepancy, the Secretary of the Commonwealth attempted to correct the text of the legislation when he prepared it for printing by changing the stated tax rate in the second paragraph of this subsection from five mills to six mills, thus making it the same as that provided elsewhere in Section 21(f). The so-called "slip copy" of the Act was so corrected and submitted to the Director of the Legislative Reference Bureau, the Attorney General, the Speaker of the State House of Representatives, and the President Pro Tempore of the State Senate, for their approval.[2]

The facts as stipulated by the parties do not indicate the reaction of the Attorney General, the Speaker, or the President Pro Tempore, but they do indicate that the Director of the Legislative Reference Bureau refused approval and that the Secretary of the Com-

---

[2] Such approval is required before any correction of a legislative text can be made by the Secretary of the Commonwealth. Act of May 28, 1937, P. L. 1019, §23, as amended, 46 P.S. §523. As amended in 1969, the Director of the Legislative Reference Bureau has been substituted for the Secretary of the Commonwealth and vice versa.

monwealth, therefore, restored the text of Section 21 (f)(2) to its original state, i.e., with a five mills rate given, before having the Act printed in the official 1967 volume of the Pamphlet Laws.

The Department seems to make either, and possibly both, of two alternate but inaccurate assumptions: one, that the attempted correction of the text of Act No. 406 by the Secretary of the Commonwealth was actually accomplished; and, that the adoption of subsequent legislation,[3] which further amended the Franchise Tax Act and which assumed the *then* current rate (as under Act No. 406, then enacted) to be six mills under Section 21(f)(2), indicates that the legislative intent in adopting Act No. 406 must have been to raise the rate to six mills in Section 21(f)(2) as elsewhere in the Act.

As to the first of these possible assumptions, it is clear that the Director of the Legislative Reference Bureau did not give his consent to the correction of Act No. 406 suggested by the Secretary of the Commonwealth, namely that Section 21(f)(2) should carry a six mills rate rather than a rate of five mills. It is equally clear that the Secretary of the Commonwealth could not have corrected the text of the Act so as to insert a six mills rate in this subsection without the consent of the Director of the Legislative Reference Bureau and others. Obviously, therefore, the attempted correction by the Secretary of the Commonwealth, as noted in the so-called "slip copy" of the law, was not accomplished, and no assumption can be entertained that it was. The "slip copy" was simply in error.

---

[3] See Note 1. In these enactments, which necessarily quoted the Franchise Tax Act section being amended, before indicating the newer language being adopted, the rate imposed by Section 21(f)(2) was given as six mills.

As to the second possible assumption, to hold that subsequently drafted amendatory legislation, which erroneously carried the words "six mills" in Section 21 (f)(2) of the legislation being amended, where the words "five mills" should have appeared can somehow demonstrate a legislative intent as to the previously enacted legislation (i.e., that it was always meant to be six mills), would be to hold that legislators in a subsequent legislative session could be permitted to indicate the legislative intent of legislators at a prior legislative session simply by thus "correcting" language adopted in the prior session. This is an interesting theory regarding the determination of legislative intent, but certainly not a persuasive one and clearly not one for which we have been able to find any precedent. Even if, as might have been the case here, some individual legislators, who dealt with the legislation concerned on each occasion, may have believed that a mistake had been made in the first instance, they could not correct it in the second merely by changing the words in their current rendition of the first enactment. Once enacted and officially promulgated, a statute must stand without change until further amendments are made in the usual process. A misquotation cannot "amend;" neither can it indicate the legislative intent as to the earlier enactment.

It seems obvious that there probably was considerable confusion on the part of many legislators, the Department, and taxpayers as to just what the rate was under Section 21(f)(2) at the time when the newer legislation was being considered. This may have been because of the aborted effort of the Secretary of the Commonwealth to correct the wording of Section 21(f)(2) in Act No. 406, which was undoubtedly known to many, or because of delay in the printing of the official Pamphlet Laws for 1967, leaving the erroneous "slip

copy" the only one readily available in printed form. The Department may have erroneously assumed at this time that Act No. 406 carried a six mills rate throughout, including Section 21(f)(2), and its advice, which was probably sought by the legislators concerned with drafting new legislation for the next year, may have been to this effect. It is also possible that some individual legislators may have had the same opinion.

Despite the confusion, however, the fact is that Act No. 406 did clearly provide a five mills rate in Section 21(f)(2) as it was officially enacted, and this was the law, therefore, for the tax period here in question. Equally clear is the appellant's position that it had the option to choose whether to pay its foreign franchise tax for the calendar year ending December 31, 1968, as provided by Section 21(f)(2) of Act No. 406, or to use the alternative method of computation provided by Section 21(f)(3). In the first instance, it would subject itself to a five mills tax, and, in the second, to a tax of six mills. Having evaluated its tax liability under each option, it decided to file under Section 21(f)(2) and thus subjected itself only to the five mills rate for the taxable year concerned.

It seems to us, therefore, that this appeal should be sustained.

In *Commonwealth v. Rieck Investment Corporation*, 419 Pa. 52, 59-60, 213 A. 2d 277, 281-282 (1965), the principles of statutory construction well established in Pennsylvania were clearly summarized by Mr. Justice, now Chief Justice, JONES:

"In analyzing the statutory provisions we must bear in mind certain well settled principles of statutory construction:

"(a) that a taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer . . .;

"(b) even though a court may be convinced that the legislature intended to enact something different from that which it did, if the language of the statute is clear and unambiguous the statute must be given its plain and obvious meaning . . .;

"(c) the 'legislature must be intended to mean what it has plainly expressed. . . . It matters not, in such a case, what the consequences may be' . . .;

"(d) it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include. . . ."

As the appellant correctly argues, *Rieck* is merely one of a long line of Supreme Court decisions which hold that when the words of a statute are free and clear of ambiguity the court must ascertain and give effect to the legislative intent as expressed in the language of the statute.[4]

In drafting, debating and adopting Act No. 406, the General Assembly could have amended Section 21(f)(2) so as to provide a tax rate of six mills therein, just as it did in other sections and subsections. It may have even meant to do so. In fact, however, the presiding officers of the House of Representatives and of the State Senate signed the legislation and verified its adoption with Section 21(f)(2) carrying the tax rate at five mills; the Governor signed the bill in that same form; and, even though the Secretary of the Commonwealth attempted to correct the bill, subsequent to its enactment and before official printing, so as to insert

---

[4] *Stegmaier Estate*, 424 Pa. 4, 225 A. 2d 566 (1967) ; *Biddle Appeal*, 390 Pa. 460, 135 A. 2d 915 (1957) ; *Federal Deposit Insurance Corporation v. Board of Finance and Revenue*, 368 Pa. 463, 84 A. 2d 495 (1951) ; *Lawrence Township School District Tax Case*, 362 Pa. 377, 67 A. 2d 372 (1949) ; *Commonwealth ex rel. Cartwright v. Cartwright*, 350 Pa. 638, 40 A. 2d 30 (1944) ; *Commonwealth v. Chester County Light and Power Co.*, 339 Pa. 97, 14 A. 2d 314 (1940).

a six mills rate in this paragraph as in all others, the necessary approval for such correction was not given and the correction actually was never made. The printed Pamphlet Laws for 1967 have always shown Section 21(f)(2) of Act No. 406 with the five mills rate included therein, and still so show it, while at the same time showing an amendment to six mills in Section 21 (f)(3) and elsewhere in the section.

We believe that, if the appellant was entitled to compute its tax under Section 21(f)(2) of Act No. 406 and this is undisputed, it was clearly entitled to do so at the five mills rate for the year in question. We, therefore, issue the following

### ORDER

Now, July 13, 1972, we reverse the order of the Board of Finance and Revenue and enter judgment in favor of the Commonwealth limited to the amount of $11,089.88 already paid by the appellant, and direct that said judgment be marked satisfied.

President Judge BOWMAN dissents.