COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF LABOR LAW COMPLIANCE, Petitioner

v.

LAWSON DEMOLITION AND HAULING CO., and John D. Lawson, Individually, Respondents.

Commonwealth Court of Pennsylvania.

Argued: June 10, 2004.

Filed: July 29, 2004.

Reargument Denied Sept. 27, 2004.

Kathryn J. McDermott, Harrisburg, for petitioner.

James F. Carl, Harrisburg, for respondents.

Before: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

The Department of Labor and Industry, Bureau of Labor Law Compliance (Bureau) appeals from an order of the Prevailing Wage Appeals Board (Board) which reversed the decision of the Secretary of Labor and Industry (Secretary) and determined that Lawson Demolition and Hauling Co., and John D. Lawson (collectively, Lawson) did not intentionally violate the Pennsylvania Prevailing Wage Act (Act), Act of August 5, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1—165–17. We affirm.

Westra Construction Co. (Westra) was awarded a contract to perform renovation

work to the central administrative building of the Pennsylvania Turnpike Commission (the project). Specifications for the project included a predetermination of the prevailing minimum wage rates issued for the job. Westra entered into a subcontract agreement with Lawson to perform demolition work on the project.

On April 6, 2001 an order to show cause was filed against Lawson asserting that he intentionally failed to pay the prevailing minimum wage to its employees. A hearing was conducted before a hearing examiner.

The Secretary issued findings and determined that the subcontract agreement between Lawson and Westra included a 5% retainage of money from Lawson until the Turnpike Commission made final payment to Westra. The money was to be paid no sooner than 35 days after the prime contract had been completed. Lawson was aware of the retainage and had previously entered into other public work contracts where there had been a 10% retainage. Lawson did not have capital or resources to meet its financial obligations except if paid by Westra. Westra stopped payments to Lawson because Lawson's suppliers were not being paid and the amount of money needed to complete the project was greater than that owed by Lawson.

The Secretary also determined that Lawson did not pay its workers for over a month at the beginning of the project and throughout the project were paid irregularly due to the lack of money. For a two month period at the end of the project from June 3, 2000 through July 29, 2000, workers were not paid until August 2001, when the Bureau paid them with money retained by Westra. When the payroll was not being met, Lawson informed employees that it did not have the money but that it would be forthcoming. Lawson also admitted that it under budgeted the project.

During its investigation, Bureau requested certified payroll receipts from Lawson. Lawson gave certified payroll reports to the Bureau for the period ending June 3, 2000 through July 29, 2000. Those payroll reports differed from those that Lawson had submitted to Westra.

The Secretary concluded that Lawson intentionally failed to pay its workers the prevailing wage in violation of the Act. Workers were not paid for a period of two months totaling $29,777.26. Even though the workers were eventually paid, subsequent compliance is not a valid defense or mitigating factor when considering an intentional Act violation. The Secretary also concluded that Lawson submitted falsified certified payrolls. Specifically, Lawson submitted payroll reports showing that the employees had been paid when in fact they had not. Due to the intentional violations of the Act, the Secretary barred Lawson from public works for a period of three years.

On appeal, the Board reversed the decision of the Secretary concluding that substantial evidence did not exist to support the Secretary's determination that Lawson intentionally violated the Act. Specifically, with regard to payment of the prevailing wage, the Board found that Lawson made numerous attempts to ensure that its workers were paid from funds withheld by Westra. In May 2000, the project supervisor prepared a list of items which needed to be finished in order to complete the contract. Although Lawson completed these items, Westra did not release the money but instead a new project manager prepared an additional list for Lawson to complete. Upon completion of these items, Westra again refused to release funds in the amount of $41,000.00 owed to Lawson.

As a result of the Bureau's audit in August, 2000, it requested that Westra retain $29,777.26 of the amount due and payable to Lawson on the project, which reflected sums not paid to Lawson's workers. Despite requests from Lawson for his workers to be paid from the retainage fund which had been sent to the Bureau, the Bureau refused to make payment of the withheld funds until August, 2001. "In fact, funds were available and in the Bureau's hands for payment to Lawson's workers for almost eleven months before they were agreed to be released to Lawson's workers." (Board's decision at p. 7.)

The Board concluded that Lawson unintentionally violated the Act by failing to make payment of prevailing wages. Lawson reasonably anticipated payment from Westra so that it could pay its workers and such funds should have been available to it. Although Lawson finished the work requested by Westra, Westra refused to pay over any of the retainage it held for Lawson. Moreover, even though the retainage funds had been forwarded to the Bureau, the Bureau held the funds for almost eleven months until August 2001 before it finally distributed it to Lawson's workers. Lawson completed the work required and it was Westra and the Bureau which prevented Lawson from paying its workers because they held the retained funds. As such, the Board reversed the decision of the Secretary.

On appeal, our review is limited to determining whether constitutional rights were violated, an error of law was committed and whether necessary findings are supported by substantial evidence. *Boss Insulation & Roofing v. Department of Labor and Industry*, 722 A.2d 778 (Pa. Cmwlth.1999).

The first issue we address is whether Lawson violated the Act by intentionally failing to pay the prevailing wage.

The Act states that substantial evidence of an intentional failure to pay prevailing wage rates includes "[a]ny acts of omission or commission done willfully or with a knowing disregard of the rights of the workmen resulting in payment of less than prevailing wage rates." Section 11(h)(1) of the Act, 43 P.S. § 165–11(h)(1). "Therefore, all that is required is evidence that the contractor performed or failed to perform any act which it knew to be in disregard to workmen's rights." *Leonard S. Fiore, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 526 Pa. 282, 289, 585 A.2d 994, 998 (1991).

Bureau argues that subcontractors have an unconditional obligation to pay prevailing wages regardless of financial ability to do so. In *Di Lucente Corp. v. Pennsylvania Prevailing Wage Appeals Board*, 692 A.2d 295, 298 (Pa.Cmwlth.1997) this court stated:

> A contractor's statutory obligation to pay the prevailing wage is not contingent on ability to pay. This obligation is unconditional, 34 Pa.Code § 9.106(a) and one that arises weekly, 34 Pa.Code § 9.103(f). The contractor's right to payment is protected by the Public Works Contractor's Bond Law of 1967 ... and therefore no justification exists for shifting the risk of doing business onto its workers.

While we agree with the Bureau that a contractor has an obligation to pay its workers, the question remains as to whether Lawson's failure to pay its employees the prevailing wage was intentional or unintentional violation of the Act. We agree with the Board that Lawson's failure to pay its workers was an unintentional violation of the Act.

As stated by both the Secretary and Board, Lawson did not have reserve capi-

tal and, so, Lawson depended on Westra to pay it so that it could pay its workers. Lawson did not have the financial resources to meet its financial obligations on the project unless it was paid by Westra. Westra informed Lawson that when the work was completed Lawson would be paid in full. At the end of July 2000, Westra considered the work to be complete and Lawson submitted a request for payment. However, Westra continued to retain $41,000.00 which Lawson never received. Had Westra paid Lawson, Lawson would have been able to timely pay its workers.

■ The standard for determining an intentional violation of the Act with respect to the prevailing wage is that contractors cannot "turn their backs" or "look the other way". Such acts of "being oblivious to the obvious" are a knowing disregard of the rights of the workers which mandate the penalties prescribed by the Act. *Dale D. Akins, Inc. v. Department of Labor and Industry*, 16 Pa.Cmwlth. 191, 329 A.2d 869 (1974). Here, Lawson after completing its responsibilities on the job maintains that it never looked the other way but always attempted to get its employees paid with the finds held by Westra.[1]

Even if it is determined that Lawson did not intentionally fail to pay the prevailing wage, Bureau nonetheless maintains that Lawson violated the Act by intentionally providing false payroll records. Specifically, contractors and sub-contractors must maintain accurate records showing the name, craft and actual hourly rate of wage paid to each worker. Section 6 of the Act, 43 P.S. § 165–6. Failure to provide the Bureau's inspector with a copy of these records is evidence of an intentional violation of the Act. *DiLucente.*

Here, we observe that Lawson did provide certified payrolls to the Bureau. Nonetheless, Bureau maintains that Lawson submitted one set of certified payrolls to Westra and a different set of certified payrolls to the Bureau's investigator. The payrolls submitted to the Bureau did not include check numbers which were previously submitted to Westra. As explained by the Board, however, although the payrolls submitted to Westra contained check numbers, they were not distributed to the employees because Westra refused payment to Lawson. The fact that Lawson sent the Bureau a certification without check numbers while waiting for Westra to remit payment to Lawson of the check numbers sent to it is not evidence of an intentional deception which distinguishes it from *DiLucente*, where the owner had the employees sign paychecks in advance which contained larger amounts than the employees were receiving.

Finally, Bureau maintains that the Board erred in misapplying the standard of review which is limited to a review for errors of law and whether the necessary findings of the Secretary are supported by substantial evidence, 34 Pa.Code § 213.7(a). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The presence of conflicting evidence does not mean that substantial evidence is lacking. *Seybold v. Department of General Services*, 107 Pa.Cmwlth. 349, 528 A.2d 999 (1986).

1. Bureau also argues that the Board's determination that Lawson cooperated with the Bureau's investigation does not mitigate against an intentional violation of the Act. The Board did not consider it as a mitigating factor but rather considered it in determining whether an intentional or unintentional violation of the Act occurred. In considering whether the contractor in *Fiore*, intentionally failed to pay the prevailing wage, one of the factors considered by the Court was the fact that the contractor fully cooperated with investigators.

Here, Bureau argues that there is substantial evidence to support the Secretary's findings. Specifically, Bureau argues that the Secretary's findings demonstrate that Lawson allowed its employees to work on the project knowing that it did not have the money to pay them and Lawson admitted he had underbid the project.

We agree with Lawson, however, that the Board properly determined that there was insufficient evidence of record to support the determination that Lawson committed an intentional violation of the Act. Specifically, Lawson at all times attempted to pay its employees by requesting the money owed to it from Westra. Lawson did not intentionally disregard the rights of its workers but always sought the money due from Westra so that its workers could be paid. Unlike the situation in *DiLucente* there was no intent on the part of Lawson to avoid adherence to the Act. Further, the Bureau itself is partly at fault for withholding the monies it received from Westra for one year instead of paying it to the employees immediately.

In accordance with the above, the decision of the Board is affirmed.

### ORDER

Now, July 29, 2004, the decision of the Prevailing Wage Appeals Board in the above-captioned matter is affirmed.