# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Jefferson University    :
Hospitals, Inc.,    :
               Petitioner    :
   :
     v.    :
   :
Pennsylvania Department of    :
Labor and Industry, Bureau of    :
Labor Law Compliance,    :   No. 2275 C.D. 2014
              Respondent    :   Argued: October 6, 2015


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                   FILED:  January 6, 2016


       Thomas Jefferson University Hospitals, Inc. (TJU) petitions this Court for review of the Pennsylvania Department of Labor and Industry, Bureau of Labor Law Compliance's (Department) November 17, 2014 order granting Elizabeth Haubrich's (Haubrich) request to inspect her personnel file under the Personnel Files Act (Act).[1]  TJU presents two issues for this Court's review: (1) whether Haubrich is a "current" employee under the Act; and (2) whether the Department's finding that Haubrich had no notice of her employment termination is supported by substantial evidence.  After review, we affirm.

       Haubrich was employed by TJU until she was discharged on August 9, 2013.  Since the date of her employment termination, Haubrich has not been employed or reemployed by TJU, nor has she been laid off with reemployment rights or on a leave of absence.  On August 16, 2013, Haubrich made a request by and

---

[1] Act of November 26, 1978, P.L. 1212, *as amended,* 43 P.S. §§ 1321-1324.

through counsel to inspect her TJU personnel file. On August 26, 2013, TJU denied Haubrich's request. On January 20, 2014, Haubrich filed a Complaint with the Department seeking her records under the Act. TJU filed an Answer to the Complaint on or about April 21, 2014.

On May 8, 2014, the Department appointed a hearing examiner. On July 2, 2014, a pre-hearing conference took place, wherein, counsel agreed that an evidentiary hearing was unnecessary because the parties would submit a joint stipulation of facts, followed by briefs and oral argument. Counsel further agreed that argument would center on the narrow legal issue of whether or not Haubrich should be considered an "employee" under the Act. Oral argument was held before the hearing examiner on August 27, 2014. On November 17, 2014, the Department granted Haubrich's request to inspect her personnel file. TJU appealed to this Court.[2]

TJU first argues that Haubrich is not an employee under the Act because she is no longer employed by TJU, the Act's legislative history confirms that former employees are not included in the definition of employee under the Act, and dicta in *Beitman v. Department of Labor and Industry*, 675 A.2d 1300 (Pa. Cmwlth. 1996) is not controlling.

Initially, "the purpose of the Act is to acknowledge the right of both public and private employees to review files held by their employers that contain information about themselves[.]" *Bangor Area Educ. Ass'n v. Angle,* 720 A.2d 198, 202 (Pa. Cmwlth. 1998). Section 2 of the Act provides in relevant part: "An employer shall, at reasonable times, upon request of an employee, permit that

---

[2] "[O]ur review is limited to determining whether constitutional rights were violated, an error of law was committed and whether necessary findings are supported by substantial evidence." *Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Lawson Demolition & Hauling Co.*, 856 A.2d 860, 862 (Pa. Cmwlth. 2004).

By Notice of Intervention filed with this Court on January 5, 2015, Haubrich intervened in this matter.

employee . . . to inspect his or her own personnel files used to determine his or her own qualifications for employment, promotion, additional compensation, **termination** or disciplinary action." 43 P.S. § 1322 (emphasis added). Section 1 of the Act, defines an "**[e]mployee**]" as "[a]ny person currently employed, laid off with reemployment rights or on leave of absence. The term 'employee' shall not include applicants for employment or any other person." 43 P.S. § 1321.

Section 1903 of the Statutory Construction Act of 1972 (Statutory Construction Act) states:

> (a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.
>
> (b) General words shall be construed to take their meanings and be restricted by preceding particular words.

1 Pa.C.S. § 1903. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. **Every statute shall be construed, if possible, to give effect to all its provisions**." Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a) (emphasis added). Finally, Section 1922 of the Statutory Construction Act declares in pertinent part:

> In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:
>
> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
>
> (2) That the General Assembly intends the entire statute to be effective and certain.

1 Pa.C.S. § 1922.

Thus,

> [w]here, as here, a statute is unclear **or susceptible to different interpretations**, courts will look to the principles of statutory construction to determine the legislative intent. In determining legislative intent, all sections of a statute must be '**read together and in conjunction with each other, and construed with reference to the entire statute**.' Additionally, courts must attempt to give meaning to every word in a statute as **we cannot assume that the legislature intended any words to be mere surplusage**. Furthermore, courts must avoid construing a statute in such a way as would lead to an absurd result.

*Allstate Life Ins. Co. v. Commonwealth*, 992 A.2d 910, 919 (Pa. Cmwlth. 2010) (citations and footnote omitted; emphasis added), *aff'd by divided court*, 52 A.3d 1077 (Pa. 2012) (quoting *Housing Auth. of Chester Cnty. v. Pa. State Civil Serv. Comm'n,* 730 A.2d 935, 945 (Pa. 1999)).

Here, Haubrich made her request to inspect her personnel file one week after her discharge. TJU asserts that Haubrich is not an employee under the Act because she is not *currently* employed and therefore is not entitled to inspect her file. However, "[a]ccording to *Webster's 11th Collegiate Dictionary,* 'current' means 'presently elapsing,' 'occurring in or existing at the present time' or 'most recent.' *Webster's Eleventh Collegiate Dictionary* 306 (2004)." *Pickens (Estate of Sherman) v. Underground Storage Tank Indemnification Bd.,* 890 A.2d 1117, 1119-20 n.9 (Pa. Cmwlth. 2006) (second italics added). Haubrich's employment, having terminated one week prior to her request, clearly qualifies as "presently elapsed" employment and/or "most recent" employment, thereby, falling within the statute. *Id.*

Moreover, under the Act an employee is expressly permitted to inspect one's personnel file to determine the basis for his/her employment termination. Contrary to TJU's assertion, it would not be possible for one to inspect his or her file regarding his or her employment termination while one is currently employed. In

reading both provisions together, and in order to avoid an absurd result, a recently-discharged employee must be included in the definition of employee.

TJU further avers that the Act's legislative history confirms that former employees are not included in the definition of employee under the Act. Section 1921(c) of the Statutory Construction Act provides in pertinent part: "When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters . . . [t]he **contemporaneous** legislative history." 1 Pa.C.S. § 1921(c) (emphasis added). Our Supreme Court has explained:

> Legislative history is generally understood to encompass a **retrospective** review of the legislative consideration of a statute, **not a review of the oxymoronic subsequent legislative history**. *See, e.g., Sullivan v. Finkelstein,* 496 U.S. 617, 631 . . . (1990) (Scalia, J., concurring) ('The legislative history of a statute is the history of its consideration and enactment. 'Subsequent legislative history'—which presumably means the post-enactment history of a statute's consideration and enactment—is a contradiction in terms.'). **We cannot discern the legislative intent of the General Assembly that passed the relevant . . . statute by examining the intent of the General Assembly that amended that statute**. *See Axe* [*Sci.*] *Corp. v. Commonwealth,* . . . 293 A.2d 617, 620 ([Pa. Cmwlth.] 1972) ('. . . to hold that subsequently[-]drafted amendatory legislation . . . can somehow demonstrate a legislative intent as to the previously[-]enacted legislation . . . would be to hold that legislators in a subsequent legislative session could be permitted to indicate the legislative intent of legislators at a prior legislative session . . . [.]'). Further, while the former version of a statute is relevant to discern the legislative intent of a later version when the statutory language is ambiguous, the inverse is not true. *See* 1 Pa.C.S. § 1921(c)(5) (providing that when the words of the statute are not explicit, the General Assembly's intent may be ascertained by considering, among other things, the former law).

*Commonwealth v. Lynn*, 114 A.3d 796, 827 (Pa. 2015) (emphasis added).

5

Here, TJU maintains that the General Assembly's rejection of the Act's proposed amendments established the General Assembly's intent not to include former employees in the definition of employee.[3]  However, because "[w]e cannot discern the legislative intent of the General Assembly that passed the relevant . . . statute by examining the intent of the General Assembly that [subsequently failed to] amend[] that statute[,]" this argument has no merit.  *Lynn*, 114 A.3d at 827.

Lastly, TJU argues that dicta is not law; thus, *Beitman* cannot control in the instant case.  We acknowledge that dicta is not binding precedent.  *City of Lower Burrell v. City of Lower Burrell Wage & Policy Comm.*, 795 A.2d 432 (Pa. Cmwlth. 2002).  However, *Beitman* offers more than dicta on this issue.

The *Beitman* Court specifically held that because "Beitman made her request almost two and one-half years after her termination[,] [c]learly, Beitman was not an 'employee,' that is, 'currently employed, laid off with reemployment rights or on a leave of absence' even under the broadest interpretation of currently employed." *Id.* at 1302.  The Court prefaced this holding by expressly explaining that "this Court **does not interpret the phrase 'currently employed'** in Section 1 of the Act so stringently as **to prohibit an individual from obtaining his or her personnel file when such request is made** contemporaneously with termination or **within a reasonable time immediately following termination**." *Id.* (emphasis added). Moreover, the dissent in *Beitman* stated that it would hold that **all** former employees should be included in the definition of employee regardless of any time issue, thereby, explaining the majority's specificity in its holding.  To argue that the Court concluded that Beitman was not an employee based solely on the fact that she was a

---

[3] TJU cites *Governor's Office of Administration v. Purcell*, 35 A.3d 811 (Pa. Cmwlth. 2011), to support its position.  However, the legislative history in that case consisted of three amendments that did not pass, that were offered **on the day** the General Assembly unanimously passed the statute at issue.  Clearly, an amendment offered the same day a statute is passed is contemporaneous, making it distinguishable from a subsequent amendment that was not passed.

6

former employee, is a disingenuous reading of this Court's opinion. For all of the above reasons, this Court holds that Haubrich is a TJU employee for purposes of the Act.

TJU next argues that the Department's finding that Haubrich had no notice of her employment termination is not supported by substantial evidence.[4] Finding of Fact (FOF) 1 states: "[Haubrich] was employed by [TJU] until August 9, 2013, at which time **she was discharged without advance notice**." Department Dec. at 2 (emphasis added). "Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion." *Stage Rd. Poultry Catchers v. Dep't of Labor & Indus., Office of Unemployment Comp. Tax Servs.,* 34 A.3d 876, 885 (Pa. Cmwlth. 2011).

> In determining whether there is substantial evidence to support the [Department's] findings, this Court must examine the [evidence] in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole.

*Stage Rd. Poultry Catchers*, 34 A.3d at 885-86. The Stipulation of Facts provides in relevant part: "(1) [] Haubrich was terminated from employment on August 9, 2013. The document attached hereto as **Exhibit '1' is admitted into the record without objection**." Original Record (O.R.) Item No. 10 (emphasis added). Exhibit 1 is a form entitled "EMPLOYEE DISCIPLINARY ACTION [(EDA).]" O.R. Item 10, Exh. 1. According to the EDA, the "DATE OF INCIDENT" was "08/09/2013". *Id.* Thus, the date of incident and Haubrich's employment termination were the same day.

---

[4] We note that this finding was not a determining factor in either the Department's decision or this Court's ruling on the first issue decided herein.

Viewing Stipulation of Fact 1 and Exhibit 1 in the light most favorable to Haubrich, and giving Haubrich the benefit of any inferences that can logically and reasonably be drawn therefrom, as we must, a reasonable mind could conclude that Haubrich "was discharged without advance notice." Department Dec. at 2, FOF 1. Thus, FOF 1 is supported by substantial evidence.

Accordingly, the Department's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Jefferson University         :
Hospitals, Inc.,                    :
                Petitioner     :
                            :
        v.                  :
                            :
Pennsylvania Department of     :
Labor and Industry, Bureau of   :
Labor Law Compliance,       :    No. 2275 C.D. 2014
                Respondent  :

## O R D E R

AND NOW, this 6th day of January, 2016, the Pennsylvania Department of Labor and Industry, Bureau of Labor Law Compliance's November 17, 2014 order is affirmed.

_____
ANNE E. COVEY, Judge