IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

## SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

| | | |
|---|---|---|
| THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC., | : | No. 30 EAP 2016 |
| | : | |
| | : | Appeal from the Order of |
| Appellant | : | Commonwealth Court entered on |
| | : | 01/06/2016 at No. 2275 CD 2014 |
| | : | affirming the Order entered on |
| v. | : | 11/17/2014 of the Department of Labor, |
| | : | at No. 2014-02 and the 02/17/2016 |
| | : | Order Denying the Application for |
| PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF LABOR LAW COMPLIANCE, | : | Reargument. |
| | : | |
| | : | ARGUED: March 7, 2017 |
| | : | |
| Appellee | : | |
| | : | |
| ELIZABETH HAUBRICH, | : | |
| | : | |
| Intervenor | : | |

## OPINION

**JUSTICE WECHT**                                                                        **DECIDED: June 20, 2017**

In this appeal, we consider whether a recently terminated employee is an "employee" and, thus, entitled to inspect her personnel file, according to the Inspection of Employment Records Law (hereinafter "the Personnel Files Act" or "the Act"), 43 P.S. §§ 1321-24. Because we conclude that the Act's definition of "employee" excludes former employees, we hold that a terminated employee is precluded from inspecting her file. We reverse the contrary holding of the Commonwealth Court.

At the heart of this case is the Personnel Files Act's definition of "employee," which is as follows:

> Any person currently employed, laid off with reemployment rights or on leave of absence. The term 'employee' shall not include applicants for employment or any other person.

43 P.S. § 1321. The Act further provides:

> An employer shall, at reasonable times, upon request of an employee, permit that employee or an agent designated by the employee to inspect his or her own personnel files used to determine his or her own qualifications for employment, promotion, additional compensation, termination or disciplinary action . . . .

43 P.S. § 1322.

In *Beitman v. Dep't of Labor & Indus.*, 675 A.2d 1300 (Pa. Cmwlth. 1996), the Commonwealth Court, sitting *en banc*, considered whether the Personnel Files Act allowed a former employee to access her file. In that case, an employee who had been terminated over two years earlier requested access to her personnel file pursuant to section 1322. The employer denied her request, citing the Act's definition of employee. The Department of Labor and Industry's Bureau of Labor Law Compliance ("Department") upheld that decision.

The employee appealed to the Commonwealth Court, arguing that, because section 1322 permits inspection by an employee "to determine his or her own qualifications for . . . termination or disciplinary action," 43 P.S. § 1322, the General Assembly must have intended for terminated employees to be covered by the Act. The employee further asserted that to interpret the Act any other way would render the phrase "termination or disciplinary action" mere surplusage.

The Commonwealth Court majority ultimately agreed with the Department and held that the former employee was not permitted to access her file. However, the majority confined its holding to the specific facts of the case, explaining that it did "not interpret the phrase 'currently employed' in [s]ection [1321] so stringently as to prohibit

an individual from obtaining his or her personnel file when such request is made *contemporaneously with termination or within a reasonable time immediately following termination.*" *Beitman*, 675 A.2d at 1302 (emphasis added).

Three judges dissented, opining that the Act did not clearly and unambiguously exclude former employees from the definition of employee. *See Beitman*, 675 A.2d at 1303 (Friedman, J., dissenting). The dissent reasoned that the exclusion of "any other person" under section 1321 more likely was intended to exclude individuals who had never been employees rather than those that had at one time been employed, especially considering the use of the word "termination" in section 1322. The dissent concluded that section 1321 was ambiguous when read along with section 1322, because section 1322 allows employees to view their personnel files to ascertain the reason for their termination. In the dissent's view, if "employee" excluded terminated employees, the language in section 1322 would be meaningless. The dissent rejected the majority's suggestion that employees could obtain their files contemporaneously with termination or immediately thereafter. Such a reading, the dissent opined, was at odds with what the majority stated was the plain and unambiguous language of the Act. The dissent suggested that the majority could not have it both ways. *See Beitman*, 675 A.2d at 1304 n.4 (Friedman, J., dissenting) ("Following the Majority's rationale, if section [1321] defines an "employee" to exclude former employees, then section [1322], which defines the rights of "employees" under the Act, cannot, by definition, afford any protection to former employees, no matter how recent their termination.").

In the dissent's view, the point in time at which an employee's rights are most in jeopardy is at termination, and most terminations do not come with advance notice. The dissent found it unreasonable to conclude that the General Assembly would have intended to exclude terminated employees from the protections of the Act. Accordingly,

the dissent would have held that the Act's definition of employee includes former employees who were terminated prior to requesting to view their files.

Following *Beitman*, the Department developed a policy that allows former employees to access their files if they make the request within a reasonable time. The Department generally has defined a reasonable time as approximately thirty days after termination. *See* Appellant's Br. at 31 ("In at least thirty cases . . . since the *Beitman* decision . . . the Department [has] held that 'currently employed' could encompass persons who requested their personnel files seventeen, nineteen, twenty-three, and twenty-four days after their employment ended[,] *but not* persons who requested their files thirty-two, thirty-four, thirty-six, forty-two, or forty-five days after termination.") (emphasis in original).

The *Beitman* decision, and the Department's application of that decision, form the backdrop for the present controversy.

The facts of this case are straightforward and undisputed. Elizabeth Haubrich worked for Thomas Jefferson University Hospital ("Hospital") as a nurse-anesthetist. The Hospital terminated Haubrich on August 9, 2013. A week later, on August 16, 2013, Haubrich filed a request with the Hospital to view her personnel file pursuant to the Personnel Files Act. Believing that Haubrich was not entitled to view her files because she was no longer an employee, the Hospital denied her request.

On January 20, 2014, Haubrich filed a complaint with the Department seeking access to her records under the Act. The parties agreed to forgo an evidentiary hearing and filed a joint stipulation of facts. Haubrich conceded that she was not employed by the Hospital at the time that she made the request. She also stipulated that she did not have reemployment rights and was not on a leave of absence. The parties submitted briefs and the Department held oral argument on the sole issue of whether Haubrich

was an "employee" under the Act. Relying upon the *Beitman* court's statement that former employees who request their files within a reasonable time following their termination are covered by the Act, the Department determined that Haubrich had requested her file within a reasonable time after her termination. Thus, on November 17, 2014, the Department granted Haubrich's request to inspect her personnel file.

The Hospital appealed to the Commonwealth Court, arguing that the plain language of the Act clearly excludes former employees from the definition of employee. Specifically, the Hospital emphasized that the Act uses the term "currently employed" and excludes "any other person." 43 P.S. § 1321. The Hospital further argued that the legislative history of the Act indicates that the General Assembly did not intend to allow former employees to access their personnel files, directing the court to various failed attempts in the General Assembly to amend the Act to include terminated employees. Finally, the Hospital argued that the qualifying language from *Beitman* was mere *dicta*, and therefore was not controlling.

The Commonwealth Court defined "current" to mean "'presently elapsing,' 'occurring in or existing at the present time' or 'most recent.'" *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Labor & Indus.*, 131 A.3d 567, 570 (Pa. Cmwlth. 2016) (quoting *Pickens v. Underground Storage Tank Indemnification Bd.*, 890 A.2d 1117, 1119-20 n.9 (Pa. Cmwlth. 2006)).[1] Applying that definition, the court found that

---

[1] In *Pickens*, the Commonwealth Court addressed whether a landowner was entitled to receive payments from the Underground Storage Tank Indemnification Fund pursuant to the Storage Tank and Spill Prevention Act ("Tank Act"), 35 P.S. §§ 6021.101-6021.2104. In order to be eligible to receive payments under the Tank Act, a claimant must meet certain eligibility requirements, including payment of the "current fee" for the underground storage tank. The parties disputed what was included in the "current fee" and, in settling that dispute, the Commonwealth Court observed that "'current' means 'presently elapsing,' 'occurring in or existing at the present time' or 'most recent.'" *Pickens v. Underground Storage Tank Indemnification Bd.*, 890 A.2d (continued...)

"Haubrich's employment, having terminated one week prior to her request, clearly qualifies as 'presently elapsed' employment and/or 'most recent' employment, thereby, falling within the statute." *Thomas Jefferson Univ. Hosps.*, 131 A.3d at 570. The court also opined that it was necessary to construe the Act to include recently terminated employees because, pursuant to section 1322 of the Act, "an employee is expressly permitted to inspect one's personnel file to determine the basis for his [or] her employment termination, [and] it would not be possible for one to inspect his or her file regarding his or her employment termination while one is currently employed." *Id.*; *see* 43 P.S. § 1322. Therefore, the Commonwealth Court concluded, reading "recently terminated employees" into the Act was necessary to avoid an absurd result.

The Commonwealth Court was not persuaded by the Hospital's legislative history argument, explaining that the only legislative history that is relevant to discern the meaning of a statute is the "contemporaneous legislative history," 1 Pa.C.S. § 1921(c), that is, the history of the statute prior to its enactment and not the subsequent attempts by the legislature to amend the statute. The court explained that it could not "discern the legislative intent of the General Assembly that passed the relevant . . . statute by examining the intent of the General Assembly that subsequently failed to amend that statute[.]" *Thomas Jefferson Univ. Hosps.*, 131 A.3d at 571 (quoting *Commonwealth v. Lynn*, 114 A.3d 796, 827 (Pa. 2015)).

Finally, the Commonwealth Court concluded that the qualifying language in *Beitman* was more than *dicta*. The court opined that the language was, in fact, part of the holding and was included by the majority in response to the dissent's position that

---

(...continued)
1117, 1119-20 n.9 (Pa. Cmwlth. 2006) (quoting Webster's Eleventh Collegiate Dictionary 306 (2004)).

the statute encompasses all former employees. The court concluded that it would be disingenuous to read *Beitman* as holding that no former employee can qualify under the Act. Accordingly, the Commonwealth Court held that Haubrich was an employee under the Act, and it affirmed the Department's order.

The Hospital filed a petition for allowance of appeal with this Court. We granted *allocatur* on the following issue of first impression, as framed by the Hospital:

> Whether the Pennsylvania Personnel File Act [43 P.S. §§ 1321-24]'s definition of "current employee" means *former* employee, as was held by the Commonwealth Court in this case when it erroneously relied on nonprecedential *dicta* in an earlier Commonwealth Court decision (*Beitman v. Dep't of Labor & Indus.*, 675 A.2d 1300 (Pa. Cmwlth. 1996))?

*Thomas Jefferson Univ. Hosps., Inc. v. Pennsylvania Dep't of Labor & Indus., Bureau of Labor Law Compliance*, 143 A.3d 889 (Pa. 2016) (emphasis in original).

We are called upon to interpret the Act's definition of "employee." This requires us to perform the familiar task of statutory interpretation. Statutory interpretation is a question of law over which our standard of review is *de novo*, and our scope of review plenary. *Commonwealth v. Kingston*, 143 A.3d 917, 921 (Pa. 2016). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501, *et seq.*, which directs us to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a)." *Kingston*, 143 A.3d at 922.

> In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision." *Oliver v. City of Pittsburgh*, 11 A.3d 960, 965 (Pa. 2011).

*Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1192-93 (Pa. 2012) (internal citations modified).

The Hospital expands upon the arguments that it raised before the Commonwealth Court. The Hospital urges that the language of section 1321 unambiguously defines "employee" to include only individuals "currently employed, laid off with reemployment rights or on leave of absence," and that it expressly excludes "any other person," which necessarily encompasses a person who was recently terminated.

The Hospital criticizes the Commonwealth Court's reliance upon the language of section 1322, arguing that it is unnecessary to look beyond the definition in section 1321 because the language of that section is clear. Moreover, the Hospital disputes the Commonwealth Court's conclusion that the portion of section 1322 referring to termination is rendered meaningless when former employees are excluded from the Act. The Hospital explains that some employed individuals may be notified of their termination in advance and could access their personnel file while still employed. Additionally, the Hospital notes that section 1322 does not allow an individual to view his or her personnel file to ascertain the reasons for their termination; rather, it allows them to view the file in order to assess, *inter alia*, their "*qualifications for . . . termination.*" 43 P.S. § 1322 (emphasis added). Thus, the Hospital suggests, current employees may wish to view their files in order to evaluate whether their conduct constitutes grounds for termination based upon their employer's policies.[2]

The Hospital also challenges the Commonwealth Court's definition of "current." It argues that the Commonwealth Court employed an inapplicable definition, *i.e.*, "most recent," and shifted the tense of another definition, changing "presently elapsing" to

---

[2] Additionally, the Hospital notes that former employees who believe they have been wrongfully terminated may gain access to their files by filing a lawsuit and seeking the files in discovery.

"presently elapsed." The Hospital explains that the definition of "most recent" as applied in *Pickens* was applicable in that case because the court was interpreting the term "current fee." Conversely, in the context of whether someone is currently employed, the Hospital maintains, the plain meaning of "currently" cannot mean "most recently." The Hospital observes that no one who recently lost his or her job would say that he or she is currently employed.

The Hospital revives its argument that the language from *Beitman*, in which the Commonwealth Court stated that it was not deciding whether recently terminated employees are covered by the Act, was *dicta*. The Hospital notes that the *Beitman* majority actually held that a former employee was *not* entitled to view her file pursuant to the Act. The Hospital quotes the *Beitman* majority's statement that "had the legislature intended to encompass ex-employees in the definition of 'employee,' it would have specifically included them in the definition." Appellant's Br. at 26 (quoting *Beitman*, 675 A.2d at 1302.). The Hospital also notes that the *Beitman* dissent interpreted the majority's holding to exclude all ex-employees. *See Beitman*, 675 A.2d at 1303 (Friedman, J., dissenting) ("[A]ccording to the Majority . . . only those three categories of persons enumerated in section 1 are permitted access to their personnel files; all other persons not within one of those three specific categories are denied such access."). The Hospital emphasizes that the former employee in *Beitman* had been terminated over two years prior to requesting her file, and, thus, the issue of whether a recently terminated employee is covered by the Act was not before the court. Accordingly, the Hospital asserts, the *Beitman* majority's further explanation of its interpretation of the Act was not essential to its holding and is *dicta*.

Finally, the Hospital argues that the *Beitman* comment as to recent terminations is unworkable in practice. The Hospital claims that allowing former employees to seek

their personnel files within a "reasonable time" perpetuates uncertainty because employers will be unsure about precisely what constitutes a reasonable time and, thus, will not know whether to allow particular former employees to view their files. The Hospital also claims that it cannot be left up to the Department to define what constitutes a reasonable time because the Department lacks rulemaking authority under the Act. Finally, the Hospital asserts that, because of the likelihood of acrimony between terminated employees and their former employers, it is prudent to exclude former employees from the Act so that they cannot use the information in their files to harass employers or their former co-workers or to otherwise disrupt the workplace.

In response, the Department argues that the Act is ambiguous because, although section 1321 seems to exclude former employees from coverage, section 1322 allows an employee "to inspect his or her own personnel files *used to determine his or her own qualifications for . . . termination.*" 43 P.S. § 1322 (emphasis added). The Department asserts that it would be impossible for an employee to inspect the files related to his or her termination prior to being terminated. The Department invokes the rule of statutory construction requiring this Court to consider the meaning of each part of a statute in the context of its whole. *See A.S. v. Pa. State Police*, 143 A.3d 896, 906 (Pa. 2016) ("[i]n construing and giving effect to the text [of a statute], we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.") (internal quotation omitted); *Commonwealth v. Giulian*, 141 A.3d 1262, 1267 (Pa. 2016) ("in ascertaining legislative intent, every portion [of a statute] is to be read together with the remaining language and construed with reference to the statute as a whole."). Applying this principle, the Department argues that the definition of "employee" contained in section 1321 must be read in the context of what is permitted under section 1322. When read together, according to the Department, the two

sections are irreconcilable based upon their plain language, rendering the Act ambiguous.

The Department suggests that this ambiguity was resolved by the Commonwealth Court over twenty years ago when it decided *Beitman*, and that the Commonwealth Court in the present case correctly applied the rules of statutory construction in essentially ratifying *Beitman*. The Department explains that, construing the Act to exclude recently terminated employees produces "a result that is absurd, impossible of execution [and] unreasonable," *see* 1 Pa.C.S. § 1922(1): no one would ever be able to view personnel files that served as the basis for termination despite the fact that section 1322 provides for such. The Department further argues that reading portions of section 1322 out of the Act also violates the rule of statutory construction "that the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). The Department posits that the Commonwealth Court avoided violation of these rules of statutory construction in *Beitman* by concluding that the Act must allow some former employees to access their files, but restricting that group to employees who were concurrently terminated or who requested their files within a reasonable time following termination. The Department stresses that this caveat was more than mere *dicta* because it specifically provided the parameters of the Commonwealth Court's interpretation of section 1321, which was the exact issue before the court.

The Department criticizes the Hospital's attempt to use post-enactment legislative history as support for the Hospital's proffered interpretation of the Act, arguing that only "contemporaneous legislative history" may be used to discern legislative intent. *See* 1 Pa.C.S. § 1921(c)(7); *Lynn*, 114 A.3d at 827 ("Legislative history is generally understood to encompass a retrospective review of the legislative

consideration of a statute, not a review of the oxymoronic subsequent legislative history."). Moreover, the Department argues that the Commonwealth Court's interpretation of the Act in *Beitman* has been controlling precedent for over two decades. Thus, the General Assembly's failure to amend (or choice not to amend) the Act could be interpreted as validation of the *Beitman* standard.

The Department also challenges the Hospital's characterization of the Department's role in adjudicating disputes under the Act. The Department points to section 1324 of the Act, which authorizes it to "make and enforce such orders as [it] shall deem appropriate to . . . provide access to [personnel files.]" 43 P.S. § 1324. The Department explains that it has not engaged in unauthorized rulemaking, but has applied the *Beitman* standard consistently over the past twenty years, which has resulted in a consistent cut-off around one month from the date of termination, after which a former employee may no longer access their file.

Finally, the Department argues that the Hospital's assertion that the *Beitman* standard is unworkable is a policy argument that should be directed toward the General Assembly rather than to this Court. The Department explains that, by enacting the statute, the General Assembly made the policy decision that employee access to personnel files was worth the cost of any hardship experienced by employers and any disruptions in the workplace. Moreover, the Department notes that the Act already has in place several measures meant to balance employer and employee interests, and that the Hospital exaggerates many employer concerns.

Haubrich, as an intervenor, also filed a brief responding to the Hospital's arguments. The majority of Haubrich's argument is duplicative of the Department's position. She reiterates the ambiguities of the Act that result when section 1321 and 1322 are read together, but adds that the phrase "any other person" in section 1321

does not encompass former employees because it must be read in the context of the words that immediately precede it, which refer to applicants. Accordingly, Haubrich argues that "any other person" only refers to other people who, like applicants, have never been employees. Thus, she claims that section 1321 does not clearly exclude former employees. Haubrich also adds that public policy favors a broad interpretation of the Act, which is remedial legislation designed to protect employees. In most other respects, her argument mirrors that of the Department.

The Personnel Files Act defines "employee" as "[a]ny person currently employed, laid off with reemployment rights or on leave of absence," and provides that, "[t]he term 'employee' shall not include applicants for employment or any other person." 43 P.S. § 1321. Because the parties have agreed that Haubrich was not laid off with reemployment rights and was not on a leave of absence, our inquiry centers on the meaning of "currently employed" as used in the statutory definition.

The dictionary is one tool that this Court uses to apprehend a term's plain meaning. The Oxford English Dictionary defines "employed" as ". . . in (another's) employ." *The Compact Oxford English Dictionary*, 509 (2d ed. 2007); *see also id.* at 509 (defining "employ" as "to use the services of (a person) in a professional capacity, or in the transaction of some special business; to have or maintain (person's) in one's service."). "Currently" is defined as, *inter alia*, "now, at the present moment." *Id.* at 377. Thus, the commonly accepted understanding of being currently employed requires that a person be maintained in another's service now, at the present time.

The Commonwealth Court's reasoning that "current" can also mean "most recent" or "presently elapsed" is strained.[3] It is true that "current" can mean "most

---

[3] Notably, as identified by the Hospital, the Commonwealth Court shifted the tense of "presently elaps*ing*" in the definition of "current" to "presently elaps*ed*." *See Thomas Jefferson Univ. Hosps.*, 131 A.3d at 570 ("[A]ccording to Webster's 11th Collegiate (continued...)

recent" in certain contexts, such as in *Pickens*, 890 A.2d at 1119-20, where the Commonwealth Court held that the term "current fee" meant the most recent fee, or when talking about the current issue of a periodical. It does not follow that "current" or "currently" always includes that sense of recentness. More commonly, "currently" is understood to mean "right now" or "at the present time." The term "currently employed" cannot mean both presently employed and formerly employed. By this definition of "currently employed," former employees are not employees, and, therefore, are not covered by the Act. As the Hospital argues, such a conclusion arises from a common sense approach to the plain meaning of "currently," and is bolstered by the fact that section 1321 expressly excludes "any other person" from its definition of employee.

The only potential ambiguity in the Act, as asserted by the Department and Haubrich, arises when section 1321 is read in conjunction with section 1322, which allows employees to inspect their personnel files in order to "determine," *inter alia*, their "qualifications for . . . termination . . . ." Although this language appears at first blush peculiar insofar as we do not ordinarily consider people to hold "qualifications . . . for termination," it is nonetheless sufficiently unambiguous in context. As the Hospital points out, there are indeed situations in which currently employed individuals receive advance notice that they will be terminated from employment. *See, e.g., Lafayette College v. Dep't of Labor and Indust., Bureau of Labor Standards*, 546 A.2d 126 (Pa. Cmwlth. 1988), (holding that college professor was permitted to access his personnel file while still employed although he had been denied tenure, which meant that he would be discharged at the end of his employment contract). Moreover, the Act permits an

---

(...continued)
Dictionary, 'current' means 'presently *elapsing*,' . . . Haubrich's employment, having terminated one week prior to her request, clearly qualifies as "presently *elapsed*") (emphasis added).

employee "to inspect his or her own personnel files used to determine his or her own *qualifications* for . . . termination." 43 P.S. § 1322 (emphasis added). This language does not require, contemplate, or even allow that the inspecting employee be terminated. Instead, it guarantees inspection access for current employees to files that the employer uses to determine whether an employee "qualif[ies] for . . . termination." *Id.*

To be sure, it is likely that a terminated employee will have cause to inspect his or her file in order to understand why he or she was terminated.[4] However, in interpreting a statute, we generally are not concerned that the General Assembly has chosen to remedy a small subset of possible harms; this is legislative prerogative. Our only concern is that the word "termination" in section 1322 has some meaning such that it is not mere surplusage. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions"); *Commonwealth v. Driscoll*, 401 A.2d 312, 315 (Pa. 1979) ("We must assume that the legislature intends every word of the statute to have effect"). Because the phrase "files used to determine . . . qualifications for . . . termination" has meaning, even when former employees are excluded from coverage, it is not superfluous. Thus, reading the Act to exclude terminated employees does not violate the rules of statutory construction. Accordingly, the plain meaning of "currently employed" as set forth in section 1321 controls.[5]

---

[4]    It is possible, as the Hospital suggests, that the General Assembly did not believe it was necessary to provide terminated employees with inspection rights because those individuals who perceive that their termination was unlawful may gain access to their personnel files in discovery after they file a lawsuit.

[5]    Because we conclude that the Act's language is not ambiguous, we need not consider the legislative history or policy arguments forwarded by the parties. To the extent that "public policy" favors an expansion of the Personnel Files Act's protections, we emphasize that policy arguments must be addressed to the General Assembly, not to this Court.
(continued...)

Regarding *Beitman*, strictly speaking, the language that qualifies the Commonwealth Court's holding is *dicta*. It was not essential to that court's holding, and the factual scenario that it discussed was not before the court. "General expressions in an opinion must be considered in the light of and cannot be dissevered from the facts of that case; what is actually decided and controlling is the law applicable to the particular facts of that particular case and while all other statements and conclusions therein are entitled to great consideration they are not controlling." *In re Pew's Trust Estate*, 191 A.2d 399, 404 (Pa. 1963), (collecting cases), *overruled in part by Estate of Tyler*, 377 A.2d 157 (Pa. 1977); *Stellwagon v. Pyle*, 133 A.2d 819, 823 (Pa. 1957) ("[L]anguage employed in [judicial] opinions must be related to the issue decided; when it goes beyond that, it must be considered *dictum*"). Moreover, although the Commonwealth Court generally must adhere to the binding language of its own opinions, we, as the Supreme Court, are not so bound. *Commonwealth v. Cook*, 735 A.2d 673, 678 n.7 (Pa. 1999) ("[T]his [C]ourt is not bound by rulings of a lower court in this Commonwealth."). The *Beitman* Court's caveat is not based upon a plain language reading of the Personnel Files Act. Whether the caveat is part of the holding or is *dicta*, it is erroneous. Thus, although the Commonwealth Court's holding in *Beitman*—that a former employee is not covered by the Personnel Files Act—is consistent with our interpretation of the statutory language, to the extent that *Beitman* contains language that is inconsistent with today's decision, it is overruled.

---

(...continued)

Additionally, it is of no consequence that the Department, following *Beitman*, has developed what it deems a consistent body of decisions regarding what constitutes "a reasonable time immediately following termination." The rules of statutory construction do not allow us to deviate from the plain meaning of a statute simply because the body charged with enforcing it is capable of applying a different interpretation.

Reading the Personnel Files Act according to its plain terms, we conclude that former employees, who were not laid off with re-employment rights and who are not on a leave of absence, have no right to access their personnel files pursuant to the Act, regardless of how quickly following termination they request to do so. Thus, we hold that Haubrich is not permitted to access her file. The order of the Commonwealth Court is reversed, and, to the extent that *Beitman* is inconsistent with today's decision, it is disapproved.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.