J-S27031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FULTON BANK, NA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MERMELSTEIN | : | |
| | : | |
| Appellant | : | No. 2567 EDA 2019 |

Appeal from the Order Entered July 23, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2011-03186

BEFORE:   SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 30, 2020**

Appellant David Mermelstein ("Mermelstein") appeals from the order entered in the Court of Common Pleas of Montgomery County denying his petition to mark a confessed judgment satisfied and discharged pursuant to 42 Pa.C.S.A § 8104.  The trial court also purported to enter a deficiency judgment of $738,606.43 in favor of Autumn Lane Associates, LLC ("Autumn Lane").  After a careful review, we affirm the trial court's denial of Mermelstein's petition to mark the judgment satisfied under Section 8104, but we vacate the trial court's deficiency judgment.

The relevant facts and procedural history are as follows: On February 3, 2011, Fulton Bank, NA ("Fulton"), as the successor by merger to Premier

---

[*] Former Justice specially assigned to the Superior Court.

Bank, NA ("Premier"), filed a complaint in confession of judgment against Mermelstein. Therein, Fulton alleged that it was the payee and holder of a promissory note dated September 12, 2006, in the principal amount of $900,000.00 in connection with a commercial loan extended to Mermelstein.

Fulton indicated that, on September 12, 2006, Mermelstein executed a commercial loan agreement, which set forth all terms of the loan, including that Fulton could confess judgment upon default and had the right to declare all amounts under the loan immediately due and payable upon default. Further, pursuant to the promissory note, upon default, Fulton was entitled to confess judgment for the entire unpaid balance, plus accrued interest, late charges, costs of suit, and attorney's fees. In addition to securing the loan with the promissory note, real property located in Egg Harbor Township, New Jersey was provided by Mermelstein as collateral for the loan through a mortgage.

Fulton averred that, pursuant to the promissory note, Mermelstein was to make monthly payments of accrued paid interest at a variable rate beginning on October 1, 2006, with all subsequent interest payments due on the same day of each month, with the full amount of the loan due immediately upon Fulton's demand. Fulton alleged Mermelstein defaulted on the promissory note and the loan agreement by failing to pay the monthly installments of interest due on October 1, 2010, and November 1, 2010, as well as on December 1, 2010, and January 1, 2011.

Fulton alleged that, on November 11, 2010, it sent Mermelstein a notice of event of default, which advised him of the default, as well as Fulton's decision to accelerate the loan and demand for immediate payment. A sixty day grace period for repayment was offered without waiver of any of Fulton's rights. Mermelstein failed to repay the loan as demanded. Fulton alleged that, pursuant to the promissory note and loan agreement, Mermelstein owed $898,839.93 for the principal, $9,077.08 for interest accrued through January 19, 2011 (with interest accruing at $68.66 per diem from this date), $929.07 in late fees, $90,866.08 in attorney's fees, and $20.00 for satisfaction fees.

On February 3, 2011, the prothonotary entered a judgment by confession in favor of Fulton and against Mermelstein in the amount of $999,657.78, plus interest at $68.66 per diem from January 19, 2011. Mermelstein did not file a petition to have the confessed judgment opened or stricken.

Fulton initiated efforts to collect on the confessed judgment, including garnishments.[1] Further, Fulton filed a complaint in foreclosure upon the mortgage in the Superior Court of New Jersey as to the Egg Harbor Township property, and on March 4, 2013, a final order in mortgage foreclosure was entered in New Jersey.

---

[1] Fulton garnished a Vanguard account of Mermelstein's in the amount of $2,565.95.

On October 18, 2013, Fulton assigned the confessed judgment to Autumn Lane. On May 29, 2014, the sheriff of Atlantic County, New Jersey, sold the Egg Harbor Township property to Autumn Lane for costs in accordance with the final order entered in the mortgage foreclosure.[2]

On November 1, 2016, Mermelstein filed a petition pursuant to 42 Pa.C.S.A. § 8104 to mark the confessed judgment satisfied and discharged. Therein, he admitted he entered into the loan agreement discussed *supra*. He also admitted he executed a promissory note in favor of Premier, the promissory note was secured by a mortgage on the Egg Harbor Township property, and Premier fully merged into Fulton on December 9, 2006.

Mermelstein indicated that, on March 14, 2007, he obtained a $500,000.00 "line of credit" from Fulton. Mermelstein averred that he was required to use the "line of credit" to build two sample houses on the Egg Harbor Township property, and accordingly, he built two sample houses on the property. Thereafter, the Egg Harbor Township property, including the houses, was appraised by Fulton at $1,100,000.00. Mermelstein additionally averred that he gave a $300,000.00 bond to Egg Harbor Township in

_____

[2] We note Autumn Lane also obtained a charging order on a 24% limited partnership interest Mermelstein had in M & M Realty Partners, L.P. Subsequently, on October 18, 2019, the trial court entered an order authorizing a public sale of Mermelstein's transferable interest in M & M Realty Partners, L.P. Mermelstein filed a separate appeal, which this Court docketed at 3532 EDA 2019, with regard to this matter.

connection with the development of the property, which has inured to the benefit of the property's current owner. Also, there were solar panels, valued at $32,000.00, left on the property for installation on the houses.

Mermelstein admitted he was unable to make payments on the loan, as secured by the mortgage, and he defaulted in November of 2010. He noted Fulton confessed judgment, as indicated *supra*, for $999,657.78, plus interest; however, he indicated Fulton also entered a confessed judgment against Mermelstein on the "line of credit" for $558,304.71, plus interest at $55.52 per diem from January 19, 2011.

Mermelstein averred that, after he defaulted on the loan, he met with Cathy Ashley, who was the vice president of Fulton, and they agreed that Fulton would receive the deed to the Egg Harbor Township property in satisfaction of all of Fulton's judgments and liens on the property. Mermelstein contended he left the meeting "believing the entire matter concerning the [p]roperty was resolved and [he] sent a letter to Ms. Ashley confirming their agreement." Mermelstein's Petition, filed 11/1/16, at 5. However, he averred that, a few months after Fulton agreed to the deed in lieu of foreclosure, "Fulton breached the agreement and foreclosed on the [p]roperty [in New Jersey]." *Id.* Mermelstein averred he learned of Fulton's alleged breach when he received the foreclosure complaint.

Mermelstein acknowledged the confessed judgment was assigned from Fulton to Autumn Lane; however, he contended Fulton "did not tell Autumn

Lane about the second [confessed] judgment on the line of credit, and [Fulton] has vigorously pursued full payment thereon." *Id.* He averred that Fulton received $273,000.00 from Autumn Lane for the assignment of the confessed judgment; however, the assignment was worth over $1,432,000.00 since it included the Egg Harbor Township property (along with the two houses), the benefit of the bond, and the solar panels.

Mermelstein argued that, after the property was sold to Autumn Lane at the sheriff's sale in New Jersey on May 29, 2014, any debt Mermelstein had should have been extinguished. He averred that, after the sheriff's sale, neither Autumn Lane nor Fulton attempted to determine whether any alleged deficiency amount existed. Mermelstein averred the foreclosure of the property "wiped out his entire debt, including the [confessed] judgment on the note." *Id.* at 8.

Specifically, he contended that any further attempt to collect on the confessed judgment was barred by the six-month statute of limitations provided for in 42 Pa.C.S.A. § 8103 of Pennsylvania's Deficiency Judgment Act. In this vein, he argued that, since Autumn Lane filed no petition to fix the fair market value of the Egg Harbor Township property so as to seek a deficiency judgment within six months after the sheriff's sale of the property on May 29, 2014, Mermelstein was entitled to have the confessed judgment marked satisfied. He also argued any attempt to collect on the deficiency was barred by the final order entered in the mortgage foreclosure and/or under

the doctrine of laches.  Alternatively, Mermelstein argued he was entitled to an equitable credit against the confessed judgment for the fair market value of the collateral property (the Egg Harbor Township property), which was sold to the judgment creditor, Autumn Lane.

Autumn Lane filed an answer in opposition to Mermelstein's petition alleging there was a deficiency with regard to the Egg Harbor Township property.  The matter proceeded to an evidentiary hearing on Mermelstein's request to have the confessed judgment marked satisfied and/or decreased by the fair market value of the Egg Harbor Township property.  The trial court has aptly summarized the relevant argument and testimony presented at the evidentiary hearings as follows:

> At the first hearing on April 3, 2019, the parties first addressed Mermelstein's argument that any collection of a deficiency judgment was barred by the Statute of Limitations. Mermelstein argued that pursuant to the Pennsylvania Deficiency Judgment Act,[3] [specifically] 42 Pa.C.S.A. [§] 8103, [a deficiency proceeding] had to have been brought within six months after relief.  In response, Autumn Lane argued that the Pennsylvania Deficiency Judgment Act does not apply because the property at issue is located outside of Pennsylvania.  Autumn Lane also argued that the New Jersey law placing time limits on deficiency actions likewise does not apply because that law only applies to residential properties, and the property at issue is not such a property.
>
> Mermelstein then gave testimony to support his argument that the judgment should be marked satisfied.  He stated that he purchased the property at issue located in Egg Harbor [Township], New Jersey in 2010 for $900,000.00 from a bankruptcy trustee for a developer who had "failed on it."  Mermelstein planned to

---

[3] We note the Pennsylvania Supreme Court has amended the Rules of Civil Procedure to comport with the amended Deficiency Judgment Act. **See** Pa.R.C.P. Nos. 3276–3291.

- 7 -

build a moderate income home development. He was required by Egg Harbor Township [to] put $300,000.00 in escrow with the township to cover municipal and utility improvements. Mermelstein testified that due to "a huge real estate bust" in 2012-2014, "people were handing the deeds back to the bank. The bank were selling the houses just to get rid of them." He held on as long as he could, but eventually he defaulted and Fulton [] took the judgment. Autumn Lane, the assignee of this judgment, offered to compromise the note for "$50 cents on the dollar." Mermelstein said he could not come up with this money.

Mermelstein testified that an appraisal report obtained by Autumn Lane dated June 21, 2018[,] which reflected the value of the property on that date[,] proved that the property had been allowed to deteriorate, and that was the reason the appraised value of the property, $38,500.00, was so low. Mermelstein acknowledged that the property had been put up for auction, and that no bids had been received. On cross-examination, Mermelstein acknowledged that he did not appeal the entry of the confessed judgment against him, or the foreclosure judgment on the property. He testified that no one forced him into seeking the loans or buying the property. The hearing was adjourned to allow Autumn Lane to submit an additional appraisal report reflecting the value of the property on the date of the Sheriff's sale [on] May 29, 2014.

The next hearing took place on May 7, 2019. At this hearing, Autumn Lane presented testimony [from] James Boyle, a realtor who has worked in [the] Atlantic County, New Jersey area where the foreclosed upon property is located since 1994. In 2014, Boyle had a contract to list the property for sale. He testified that there were no agreements of sale to buy the property.

Boyle was qualified as an expert on real estate in the area, and expressed his opinions within a reasonable degree of professional certainty. He described in detail the real estate market in Atlantic County from 2004 through 2014, including the effect of the recession in 2008 through 2009. He also described certain issues with the property which affected its salability and its value, including visibility of high power lines, issues with frontage and accessibility, and retention basin. The property was located close to the shoreline, and to the Atlantic City Casinos. According to Boyle, its market value was affected by Hurricane Sandy, and by the closing of five casinos, with the ensuing job losses taking potential home buyers away. All of these factors,

along with comparative sales of similar properties, were considered by James Boyle in offering his opinions.

Autumn Lane then presented the testimony of Marie Shelton, who was qualified as an expert real estate appraiser currently[, as well as] on May 29, 2014. Shelton had prepared an appraisal report as to the value of the property in 2018. After the first hearing, she was asked to prepare an appraisal of what the value of the property had been on May 29, 2014. She testified that the fair market value of the property on May 29, 2014[,] was $35,800.00. An appraisal was introduced which listed the appraisal value of the property on May 1, 2014[,] as $35,800.00.

At the final hearing on June 18, 2019, Mermelstein presented testimony of Robert Salvato concerning the value of the property in 2014. Salvato is an auctioneer. Salvato testified that the market value of the property was $642,000.00, which when coupled with a $300,000.00 bond posted with Egg Harbor Township brought the amount for which Mermelstein should be credited to $942,000.00.

Trial Court Opinion, filed 10/18/19, at 3-5 (footnotes omitted) (footnote added).

At the conclusion of the hearings, by order entered on July 23, 2019, the trial court denied Mermelstein's petition to mark the judgment satisfied and discharged under Section 8104. Further, the trial court held that a deficiency existed and calculated the amount due from Mermelstein as follows: Original Judgment: $999,657.78; Minus garnished funds of $2,565.85; Minus Fair Market Values of Collateral Property as of 5/24/2014 of $35,800.00; Minus Balance of Escrow with Egg Harbor Township of $297,466.80; Plus Property Taxes Not Discharged by Sheriff's sale of Collateral for 2011, plus back taxes and fines, of $25,604.32, and for 2012-13, $49,176.98; Equals a Deficiency Judgment of $738,606.43.

Mermelstein filed a petition for reconsideration, which the trial court denied. Mermelstein filed an appeal to this Court on August 19, 2019. The trial court did not direct Mermelstein to file a Pa.R.A.P. 1925(b) statement, and consequently, no such statement was filed. The trial court filed a Pa.R.A.P. 1925(a) opinion.

Mermelstein sets forth the following issues in his "Statement of the Questions Involved" (verbatim):

1. Did the Trial Court err as a matter of law in [*sic*] when it did not satisfy the judgment pursuant to Pa.C.S.A. § 8014 [*sic*] when the Plaintiff failed to file for a deficiency judgment within six (6) months of the sheriff's sale?

2. Did the Trial Court err as a matter of law in [*sic*] when it did not satisfy the judgment based on a theory of laches when the Plaintiff made no effort to ascertain the fair market value of the property for over four (4) year[s][?]

3. Did the Trial Court err when it did not consider the valuation of the property proffered by its expert witness[?]

4. Did the [T]rial [C]ourt err by failing to give appropriate credits to the judgment for monies that have already been collected from Defendant?

Mermelstein's Brief at 4 (suggested answers omitted).

"At the outset, we note that when reviewing deficiency judgment proceedings, this Court is limited to determining whether there is sufficient evidence to sustain the holding of the trial court or whether it committed reversible error of law." *Conestoga Bank v. Tioga Investments II*, 138 A.3d 652, 655 (Pa.Super. 2016) (citation omitted).

As it pertains to the interpretation of Pennsylvania's Deficiency Judgment Act, this requires us to perform the familiar task of statutory interpretation.

> Statutory interpretation is a question of law over which our standard of review is *de novo*, and our scope of review plenary. ***Commonwealth v. Kingston***, 143 A.3d 917, 921 (Pa. 2016). "In all matters involving statutory interpretation, we apply the Statutory Construction Act, 1 Pa.C.S. §§ 1501, *et seq.*, which directs us to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a)." ***Kingston***, 143 A.3d at 922.
>
> In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning. ***See*** 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). "Relatedly, it is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision." ***Oliver v. City of Pittsburgh***, 608 Pa. 386, 11 A.3d 960, 965 (2011).

***Thomas Jefferson University Hospitals, Inc. v. Pennsylvania Department of Labor and Industry***, 640 Pa. 219, 162 A.3d 384, 389 (2017) (quotation omitted). With these relevant legal precepts in mind, we proceed to examine the issues raised by Mermelstein on appeal.

In his first issue, Mermelstein contends the trial court erred, as a matter of law, in failing to mark the confessed judgment satisfied and discharged under 42 Pa.C.S.A. § 8104.[4] Specifically, he avers that after the collateral

---

[4] 42 Pa.C.S.A. § 8104 provides the following:

property (the Egg Harbor Township property) was sold to Autumn Lane at the sheriff's sale for a sum less than the amount of the confessed judgment (which was assigned to Autumn Lane from Fulton), in order to recoup any unpaid indebtedness not satisfied by the sale of the property, Autumn Lane was required to file a petition to determine the fair market value of the property and seek any deficiency within six months of the sheriff delivering the deed of the property. Mermelstein argues that, since Autumn Lane undisputedly filed no deficiency petition, Pennsylvania's Deficiency Judgment Act provides that the confessed judgment assigned to Autumn Lane from Fulton must be marked satisfied and discharged.

---

**§ 8104. Duty of judgment creditor to enter satisfaction**
**(a) General rule.--**A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall, at the written request of the judgment debtor, or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment.
**(b) Liquidated damages.--**A judgment creditor who shall willfully or unreasonably fail without good cause or refuse for more than 90 days after written notice in the manner prescribed by general rules to comply with a request pursuant to subsection (a) shall pay to the judgment debtor as liquidated damages 1% of the original amount of the judgment for each month of delinquency beyond such 90 days, but not less than $250 nor more than $2,500. Such liquidated damages shall be recoverable pursuant to general rules, by supplementary proceedings in the matter in which the judgment was entered.
42 Pa.C.S.A. § 8104 (bold in original).

Initially, in developing his argument that the confessed judgment should be marked satisfied because Autumn Lane did not timely file a petition to establish the fair market value and seek a deficiency, Mermelstein points to Pennsylvania's Deficiency Judgment Act, 42 Pa.C.S.A. § 8103, which provides, in relevant part, the following:

**§ 8103. Deficiency Judgments**

**(a) General rule.**—Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered. If the judgment was transferred from the county in which it was entered to the county where the execution sale was held, the judgment shall be deemed entered in the county in which the sale took place.

\*\*\*

**(d) Action in absence of petition.**—If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S.A. § 8103(a), (d) (bold in original).

In interpreting Section 8103, this Court has relevantly explained:

The Deficiency Judgment Act applies whenever real property of the debtor has been sold in execution to the judgment creditor for a sum less than the amount of the judgment, interest and costs. Under the Deficiency Judgment Act, the creditor's judgment against the debtor is reduced by the fair market value of the property purchased by the creditor rather than by the actual sale price of the property. The objective of the Deficiency Judgment Act is to relieve a debtor from further personal liability to the judgment creditor when the real property taken by the judgment creditor on an execution has a fair market value on the date of sale sufficient so that the judgment creditor can dispose of the property to others without a further loss.

**Devon Service, LLC v. S & T Realty**, 171 A.3d 287, 291 (Pa.Super. 2017)

(quotation omitted).

Moreover, we have held:

The Deficiency Judgment Act…require[s] [a] [judgment creditor] to file its petition to fix the fair market value within six months of the date upon which the Sheriff delivered the deed, and it is presumed as a matter of law that a judgment is satisfied if a judgment creditor fails to proceed under the Act within the time mandated by statute. The six-month deadline derives from 42 Pa.C.S.A. § 5522 which states a six month statute of limitations is applicable to judicial sales:

> **(b) Commencement of action required.**—The following actions and proceedings must be commenced within six months:
>
> ***
>
> (2) A petition for the establishment of a deficiency judgment following execution and delivery of the sheriff's deed for the property sold in connection with the execution proceedings referenced in the provisions of section 8103(a) (relating to deficiency judgments).

***Conestoga Bank***, 138 A.3d at 656 (quoting 42 Pa.C.S.A. § 5522(b)(2)) (bold in original).

Thus, if the judgment creditor fails to file a Section 8103(a) petition to fix the fair market value of the property within six months of the sheriff delivering the deed, there is an irrebuttable presumption that the creditor was paid in full and the debtor is entitled to have the judgment marked satisfied as a matter of law. ***Home Sav. and Loan Co. of Youngstown, Ohio v. Irongate Ventures, LLC***, 19 A.3d 1074, 1078 (Pa.Super. 2011).

In the case *sub judice*, the trial court acknowledged that, after the sheriff's deed was delivered, Autumn Lane (the judgment creditor) failed to file a petition to fix the fair market value of the Egg Harbor Township property in an effort to collect any deficiency. Further, the trial court acknowledged Section 8103(a)'s and (d)'s requirement that, in Pennsylvania, a judgment creditor must file the petition within six months of the sheriff delivering the deed, or the judgment shall be marked satisfied upon petition by the judgment debtor.

However, the trial court concluded Pennsylvania's six-month limitations period was inapplicable in this case where the real property was located, foreclosed, and sold at a sheriff's sale in New Jersey. We find no error.

It is well-settled that the "petition to fix fair market value 'shall' be filed as a supplementary proceeding in the matter in which the real property was sold to the judgment creditor in execution proceedings (*i.e.* in the foreclosure

action).″ ***Home Sav. and Loan Co. of Youngstown, Ohio***, 19 A.3d at 1080 (noting the term "shall" is mandatory for purposes of statutory construction when a statute is unambiguous) (citation omitted)).  In the case *sub judice*, the foreclosure action, including the filing of the foreclosure complaint and eventual sheriff's sale, occurred in New Jersey.  Thus, any petition Autumn Lane filed to set the fair market value of the collateral property so as to determine a deficiency would be filed properly in New Jersey.[5]  Therefore, Autumn Lane is not limited by Pennsylvania's six-month statute of limitations set forth in Section 8103(a).

Moreover, we find further support for our holding in Subsection 8103(g), which sets forth the definition for words and phrases used in Section 8103, indicating that "real property collateral" means "all of the real property subject to a lien securing the obligation evidenced by the judgment **and located**

---

[5] The trial court held that "the New Jersey deficiency law has no time limits on deficiency judgments which do not involve residential property."  Trial Court Opinion, filed 10/18/19, at 7 n.3.  We note that our Supreme Court's Rules of Civil Procedure do not set forth the Rules to be followed for deficiency judgments of foreign collateral.  However, when a deficiency judgment is sought with regard to real property sold in Pennsylvania, the proper venue to file the supplementary petition is in the county where the real property was sold.  ***See*** Pa.R.C.P. 3278.

Mermelstein acknowledges that, since the foreclosure took place in Atlantic County, New Jersey, "the deficiency proceedings would have needed to be brought there[.]"  Mermelstein's Brief at 15.  However, he contends that since such proceedings did not occur within six months, Pennsylvania should apply its six-month limitations period.  For the reasons discussed *infra*, we disagree with his contention.

**within this Commonwealth**." 42 Pa.C.S.A. § 8103(g) (bold added).

Additionally, Subsection 8103(f.2) relevantly provides:

> **(f.2) Foreign collateral.--**
>
> (1) No deficiency court shall have the power to fix the fair market value of real property located outside this Commonwealth and may not take into account the value of that property in considering whether or not a deficiency exists under this section.
>
> (2) This section shall not apply to the sale of any real property located outside this Commonwealth.

42 Pa.C.S.A. § 8103(f.2) (bold in original).

Utilizing the rules of statutory interpretation, we conclude Section 8103(f.2) plainly provides that the six-month statute of limitations providing for a judgment creditor in execution proceedings to file a petition to fix the fair market value, or risk having the judgment satisfied, is not applicable to "foreign collateral," such as the New Jersey property in the case *sub judice*. *See Thomas Jefferson University Hospital, Inc.*, *supra* (setting forth the rules of statutory interpretation). Consequently, the trial court did not err in declining to presume, as a matter of law, that the judgment was satisfied on the basis Autumn Lane failed to proceed under Pennsylvania's Deficiency Judgment Act within the time mandated by the statute. Thus, it did not err in denying Mermelstein's petition to mark the judgment satisfied on this basis.[6]

---

[6] We note Mermelstein argues Pennsylvania law is applicable, as opposed to New Jersey law, since the promissory note indicates the note is governed by the laws of Pennsylvania without regard to its conflicts of law provisions. However, in applying Pennsylvania's Deficiency Judgment Act, the Act, by its own clear terms, does not apply to foreign collateral.

- 17 -

In his next issue, Mermelstein contends the trial court erred in failing to mark the confessed judgment satisfied under the doctrine of laches. Specifically, he contends Autumn Lane's delay resulted in Mermelstein changing his position such that Autumn Lane should be estopped from seeking any deficiency. In this vein, he relevantly avers:

> Mermelstein believed the matter was resolved following his de[e]d in lieu of foreclosure agreement with [C]athy Ashley. Additionally, collection actions were not promptly taken by either Fulton Bank or Autumn Lane, further making Mermelstein believe that the deed in lieu of foreclosure agreement was being honored. For that reason, Mermelstein took no further action regarding the validity of the judgment, including attempting to open the confessed judgment.

Mermelstein's Brief at 17.

We have outlined the parameters of the doctrine of laches as follows:

> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case.
>
> Unlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time. Indeed, the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations. Moreover,
>
>> [t]he party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. Such evidence may include establishing that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that the opposing party has waived his claims.

*Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014) (citations and quotations omitted).

Assuming, *arguendo*, the doctrine of laches may be raised in a petition to mark a judgment satisfied under Section 8104, we agree with the trial court that the facts do not warrant the relief requested by Mermelstein. As the trial court found, "the creditors have continuously sought to enforce their right to payment on their judgments against Mermelstein." Trial Court Opinion, filed 10/18/19, at 7. Further, Mermelstein could have filed a petition to open or strike the confessed judgment; however, he did not do so. While the record reveals Mermelstein and Ms. Ashley engaged in discussions concerning whether it would be prudent for Fulton to accept the deed in lieu of foreclosing upon the mortgage, the trial court did not find any credible evidence that the parties reached any binding agreement with regard thereto. We find no error in this regard.

In his final issues, Mermelstein alleges the trial court erred in its determination of the fair market value of the Egg Harbor Township property, the credit to be given to Mermelstein against the judgment, and its determination of a deficiency in favor of Autumn Lane.

As indicated above, as it applies to foreign collateral, Pennsylvania's Deficiency Judgment Act relevantly provides "[n]o deficiency court shall have the power to fix the fair market value of real property located outside this Commonwealth and may not take into account the value of that property in

considering whether or not a deficiency exists under this section." 42 Pa.C.S.A. § 8103(f.2).

Based on the plain and unambiguous language of Section 8103(f.2), the trial court did not have the statutory authority to determine the fair market value of the Egg Harbor Township, New Jersey property in this case or whether a deficiency existed with regard thereto. *See Thomas Jefferson University Hospitals, Inc.*, *supra* (setting forth the rules for statutory interpretation). Accordingly, inasmuch as the trial court purported to determine a fair market value for the subject foreign collateral property, and then offset it against the confessed judgment to determine that a deficiency existed in favor of Autumn Lane, we conclude this was error. *See* 42 Pa.C.S.A. § 8103(f.2). Rather, the proper determination of the fair market value of the Egg Harbor Township property must, under the plain wording of Section 8103(f.2), be made upon petition by the parties in the New Jersey court. Thereafter, if necessary, the parties may take the required steps to have the confessed judgment marked satisfied and discharged in the Court of Common Pleas of Montgomery County under Section 8104.[7]

---

[7] As indicated *supra*, the confessed judgment with regard to Mermelstein defaulting under the terms of the commercial loan agreement and promissory note was entered in the Court of Common Pleas of Montgomery County. Whether the confessed judgment should be marked satisfied cannot be determined without the New Jersey court first determining whether Autumn Lane is entitled to a deficiency judgment regarding the Egg Harbor Township real property, which necessarily entails the New Jersey court determining the fair market value of the property.

For all of the foregoing reasons, we affirm the trial court's denial of Mermelstein's petition to mark the confessed judgment satisfied and discharged under Section 8104. At this juncture, Mermelstein has not met his burden of demonstrating his entitlement to such relief in the trial court. However, we specifically vacate the trial court's purported determination regarding the fair market value of the Egg Harbor Township, New Jersey property, as well as its deficiency judgment.

Affirmed, in part; vacated, in part; jurisdiction relinquished.

Judge McCaffery did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2020