**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 41 WAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court entered June 23, |
| | : | 2022, at No. 601 WDA 2021, |
| v. | : | vacating the Order of the Court |
| | : | of Common Pleas of Allegheny |
| | : | County entered April 14, 2021, |
| RONNIE LEHMAN, | : | at No. CP-02-CR-0003380-2018, |
| | : | and remanding. |
| Appellee | : | |
| | : | SUBMITTED:  June 21, 2023 |

## OPINION

**JUSTICE BROBSON**                    **DECIDED: MARCH 21, 2024**

Section 5123(a.2) of the Crimes Code[1] provides, in relevant part, that "[a] prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of [S]ection 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act" (Controlled Substance Act).[2]

---

[1] 18 Pa. C.S. § 5123(a.2).

[2] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-113(a)(16). Section 13(a)(16) of the Controlled Substance Act provides:

> (a) The following act[] and the causing thereof within the Commonwealth [is] hereby prohibited:
>
> . . . .
>
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

Section 5123(e) of the Crimes Code[3] defines "inmate" as "[a] male or female offender who is committed to, under sentence to or confined in a penal or correctional institution." The question that we must decide in this case, in the context of an ineffective assistance of counsel claim brought under the Post Conviction Relief Act (PCRA),[4] is whether Ronnie Lehman (Lehman), who was residing at Renewal Center as a condition of his parole, was an "inmate" at the time that he unlawfully possessed a controlled substance in violation of Section 13(a)(16) of the Controlled Substance Act. After careful consideration, we hold that, under the circumstances presented here, Lehman was an "inmate" as that term is used and defined in Section 5123(a.2), (e) of the Crimes Code, and, therefore, the evidence was sufficient to sustain his conviction for a violation of Section 5123(a.2). Because the Superior Court concluded otherwise and granted Lehman post-conviction relief on his ineffective assistance of counsel claim, we reverse the judgment of that court.

## I. BACKGROUND

The relevant facts and procedural history underlying this matter, which do not appear to be in dispute, are summarized as follows. Lehman was residing at Renewal Center located in Pittsburgh, Pennsylvania, as a condition of his parole from a state sentence of incarceration.[5] On March 5, 2018, Renewal Center staff encountered Lehman unresponsive on a bathroom floor from an apparent drug overdose. In the course of rendering life-saving aid, Renewal Center staff performed a pat-down search of Lehman's person. During that search, Renewal Center staff discovered in the pocket of

---

[3] 18 Pa. C.S. § 5123(e).

[4] 42 Pa. C.S. §§ 9541-9546.

[5] The record below is wholly devoid of any facts or evidence relative to the circumstances surrounding Lehman's placement at Renewal Center. The parties, however, do not appear to dispute that Lehman was residing at Renewal Center as a condition of his parole.

Lehman's pants a hypodermic needle and a bundle—*i.e.*, ten stamp bags—of what was later determined to be a combination of heroin, fentanyl, and cocaine.

Based on the foregoing, the Commonwealth of Pennsylvania (Commonwealth) charged Lehman with the following: (1) a violation of Section 5123(a) of the Crimes Code (providing a controlled substance to a confined person);[6] (2) a violation of Section 13(a)(16) of the Controlled Substance Act (possession of a controlled substance); and (3) a violation of Section 13(a)(32) of the Controlled Substance Act (possession of drug paraphernalia).[7] Lehman filed a motion to dismiss all three charges pursuant to what is commonly referred to as the Drug Overdose Response Immunity Act (DORIA),[8] which, *inter alia*, shields a person experiencing a drug overdose event from prosecution for certain enumerated offenses, including, but not limited to, possession of a controlled substance and possession of drug paraphernalia. In response to that motion, the Commonwealth *nolle prossed* the possession of a controlled substance and possession of drug paraphernalia charges. The Commonwealth also filed a motion to amend the criminal information, wherein it sought to replace the charge of providing a controlled substance to a confined person with a charge alleging a violation of Section 5123(a.2) of the Crimes Code (possession of a controlled substance by a prisoner or inmate). The Court of Common Pleas of Allegheny County, acting in its capacity as the trial court, granted the Commonwealth's motion to amend. Thus, the sole remaining charge filed against Lehman was for a violation of Section 5123(a.2). While Lehman acknowledged that a violation of Section 5123(a.2) was not an offense enumerated within DORIA, he, nevertheless, maintained that DORIA shielded him from prosecution therefor, and, as a

---

[6] 18 Pa. C.S. § 5123(a).

[7] 35 P.S. § 780-113(a)(32).

[8] Act of April 14, 1972, P.L. 233, *as amended*, added by the Act of September 30, 2014, P.L. 2487, 35 P.S. §§ 780-113.7.

result, he was entitled to a dismissal of that charge. In support, Lehman contended that, because DORIA shielded him from prosecution for possession of a controlled substance, that same act of possession could not form the basis for a violation of Section 5123(a.2). The trial court disagreed and denied Lehman's motion to dismiss.

The matter proceeded to a stipulated, nonjury trial. At the conclusion thereof, the trial court found Lehman guilty of a violation of Section 5123(a.2) of the Crimes Code and sentenced him to 35 to 90 months' incarceration. Lehman filed a direct appeal with the Superior Court, arguing that the trial court erred by denying his motion to dismiss because he was immune from prosecution under DORIA. *Commonwealth v. Lehman*, 231 A.3d 877, 880 (Pa. Super. 2020). Ultimately, the Superior Court affirmed Lehman's judgment of sentence, holding that DORIA did not afford him immunity because DORIA "provides immunity for only certain, specifically[ ]enumerated offenses" and a violation of Section 5123(a.2) was not one of those specifically enumerated offenses. *Id.* at 881. In response to Lehman's contention that he should, nevertheless, be entitled to immunity because an element of a violation of Section 5123(a.2) "is the crime of possession of a controlled substance, which is an enumerated offense" under DORIA, the Superior Court explained: (1) although possession of a controlled substance may be an element of possession of a controlled substance by a prisoner or inmate, "the crimes are nevertheless distinct;" (2) a conviction under Section 5123(a.2) is "graded as a second-degree felony," and DORIA "was not intended to provide immunity for serious offenses;" and (3) "the mere fact that the crime of possession of a controlled substance is an element of the crime of possession of [a controlled substance by a prisoner or inmate] is not indicative of any [l]egislative intent to provide immunity for all offenses

involving possession of drugs."[9] *Id.* at 882. Lehman thereafter filed a petition for allowance of appeal with this Court, which we denied.

Subsequent thereto, Lehman filed a timely *pro se* PCRA petition. The Court of Common Pleas of Allegheny County, now acting in its capacity as the PCRA court, appointed counsel, who filed an amended PCRA petition. Therein, Lehman asserted that his trial and appellate counsel were ineffective[10] for failing to challenge the sufficiency of the evidence supporting his conviction under Section 5123(a.2) of the Crimes Code. In support, Lehman contended that his sufficiency claim had arguable merit because, given his status as a parolee who was voluntarily placed at Renewal Center as a condition of his parole, the Commonwealth failed to prove beyond a reasonable doubt that he was an "inmate" or "prisoner" at the time that he unlawfully possessed a controlled substance. *See* Section 5123(a.2), (e) of the Crimes Code. Thus, Lehman maintained that, had his trial counsel argued that the evidence was insufficient to support his conviction under Section 5123(a.2), the trial court would not have found him guilty of that charge, or, alternatively, had his appellate counsel raised the issue on direct appeal, the Superior Court would have vacated his conviction. Lehman further contended that his trial and appellate counsel did not have a reasonable basis for their omissions in this regard and

---

[9] Notably, in a concurring opinion, Judge Pellegrini, joined by President Judge Emeritus Bender, questioned whether a parolee, such as Lehman, who is residing in a facility, such as Renewal Center, as a condition of his parole, is a "prisoner" or "inmate" as those terms are used and/or defined in Section 5123(a.2), (e) of the Crimes Code. *Lehman*, 231 A.3d at 883-84 (Pellegrini, J., concurring). Given, however, that Lehman's counsel did not raise that issue on appeal, the Superior Court did not address it and, instead, left it for consideration on another day. *Id.*

[10] To succeed on an ineffective assistance of counsel claim, a petitioner must establish: "(1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her conduct; and (3) that the petitioner was prejudiced by counsel's performance, *i.e.*[,] that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different." *Commonwealth v. Cox*, 863 A.2d 536, 543 (Pa. 2004) (citing *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001), and *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)).

that he was prejudiced thereby because the trial court ultimately found him guilty and sentenced him for a crime that the Commonwealth failed to prove beyond a reasonable doubt and the Superior Court thereafter affirmed that conviction.

The PCRA court, after providing the requisite notice of its intent to do so, dismissed Lehman's PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. Lehman appealed to the Superior Court, arguing that the PCRA court abused its discretion by doing so because he had established that there was insufficient evidence to sustain his conviction under Section 5123(a.2) of the Crimes Code insofar as he was not a "prisoner" or "inmate" at the time that he unlawfully possessed a controlled substance. In its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the PCRA court concluded that Lehman's trial and appellate counsel were not ineffective because his underlying sufficiency claim lacked arguable merit. To that end, the PCRA court explained that Lehman satisfied the definition of "prisoner" or "inmate" for the purposes of Section 5123(a.2) because he was involuntarily committed to Renewal Center as a condition of his parole and, if he left Renewal Center without express permission, he would have violated the terms and conditions of his parole.

In a divided, published opinion, a three-judge panel of the Superior Court vacated the PCRA court's order and remanded the matter to the PCRA court for further proceedings.[11] *Commonwealth v. Lehman*, 278 A.3d 321 (Pa. Super. 2022). After noting that the parties seemed to agree that Lehman was not a "prisoner" or "confined" at the time he unlawfully possessed a controlled substance in violation of Section 13(a)(16) of the Controlled Substance Act and that, "[a]s a community corrections center, Renewal

---

[11] Judge Pellegrini, who authored the concurring opinion issued in Lehman's direct appeal, and President Judge Emeritus Bender, who joined Judge Pellegrini's concurring opinion, were in the Superior Court majority as to the PCRA court's error. Judge Bowes, the third member of the panel reviewing the PCRA court's decision, issued a dissenting opinion, which is discussed in more detail *infra*.

[Center] indisputably qualifies as a correctional institution," the Superior Court indicated that the narrow issue before it was "whether a parolee may be considered an 'inmate' for the purposes of Section 5123(e) by virtue of being 'committed to' a halfway house." *Id.* at 324-25. Observing that the phrase "committed to" is not defined in Section 5123 or elsewhere within the Crimes Code but, rather, is "simply part of the definition of an 'inmate,'" the Superior Court explained that, "as employed in Section 5123 and other relevant statutes and taken in full context, 'committed to' necessarily refers to a class of offenders held or incarcerated in correctional facilities *against their will*." *Id.* at 325 & n.5 (emphasis added) (noting that "[t]he word[] 'commit' describes the process of sending a person somewhere without the latter's consent," and citing *Commit*, Black's Law Dictionary 340 (11th ed. 2019) ("To send (a person) to prison or to a mental health facility, esp. by court order.")). In the Superior Court's view, given that parolees are not similarly situated to pre-release inmates—*i.e.*, parolees are "at liberty on parole" and pre-release inmates are in official detention—"parolees are not 'inmates' who are 'committed to' a community corrections center." *Id.* at 325-26. Applying these principles to the facts of the present case, the Superior Court explained that "Lehman's option to leave Renewal [Center], his statutory status as a 'parolee at liberty on parole,' and the absence of his right to accrue credit time against his sentence while staying there[] made it impossible for Lehman to qualify as an 'inmate' for the purposes of Section 5123[(a.2)]." *Id.* at 326. Accordingly, the Superior Court concluded that the PCRA court abused its discretion in dismissing Lehman's PCRA petition alleging ineffective assistance of his trial and appellate counsel because, had Lehman's trial counsel sought to have the charge alleging a violation of Section 5123(a.2) dismissed due to the fact that Lehman was not an "inmate" at the time that he unlawfully possessed a controlled substance or had Lehman's appellate counsel sought to challenge the sufficiency of the evidence

supporting Lehman's conviction under Section 5123(a.2) on direct appeal, "there is a reasonable likelihood that [those] argument[s] would have succeeded."[12]  *Id.*

In a dissenting opinion, Judge Bowes opined that "proper application of the rules of statutory construction to the language of" Section 5123(a.2) of the Crimes Code should have required the majority to affirm the PCRA court's conclusion that Lehman was an "inmate" at Renewal Center at the time he unlawfully possessed a controlled substance in violation of Section 13(a)(16) of the Controlled Substance Act.  *Id.* at 329 (Bowes, J., dissenting).  In support, Judge Bowes noted that whether Lehman was "at liberty on parole" for purposes of credit for his time served at Renewal Center is irrelevant to a determination of whether Lehman was an "inmate" pursuant to Section 5123(a.2) because "the purposes for [Section 5123(a.2)] and those [statutes] governing time credit are distinct."  *Id.* at 332-33.  Judge Bowes explained that, in defining the term "commit," the majority "blatantly ignore[d] that the common usage of [that] term . . . includes a person's voluntary, consensual entrustment of himself to a place or a cause."  *Id.* at 334 (quoting *Commit*, Merriam-Webster.com, https://merriam-webster.com/dictionary/commit (definition 3) (last visited March 15, 2024) (setting forth five options to define "commit:" (1) "to put into charge or trust:  ENTRUST;" (2) "to place in a prison or mental institution;"

---

[12] In a footnote, the Superior Court alternatively concluded that, even if the definition of "inmate" as used in Section 5123(a.2) of the Crimes Code was ambiguous, Lehman would still be entitled to relief under the rule of lenity.  *Lehman*, 278 A.3d at 327 n.8 (citing *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 600 (Pa. Cmwlth.) ("[A]ny ambiguity in a criminal statute will be construed in favor of the defendant.  The rule of lenity requires a clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." (quoting *Yourick v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 347 (Pa. Cmwlth.) (Leavitt, J., dissenting), *appeal denied*, 981 A.2d 220 (Pa. 2009)), *appeal denied*, 29 A.3d 374 (Pa. 2011)).  The Superior Court noted that, under the rule of lenity, it would have been required to "give Lehman the benefit of any lack of statutory clarity concerning whether he was an "inmate" who was "committed to" a community corrections center."  *Id.*

(3) "to consign or record for preservation;" (4) "to put into a place for disposal or safekeeping;" and (5) "to refer (something such as a legislative bill) to a committee for consideration and report")). Applying this definition here, Judge Bowes noted that Lehman was "committed to" Renewal Center because he was "placed [there] by the [Pennsylvania Parole] Board [(Parole Board)] for safekeeping[] and entrusted to Renewal [Center] as a condition of his parole." *Id.* at 335. Stated another way, "when [Lehman] opted to agree to the conditions of his parole, he voluntarily committed himself to [Renewal Center,] a correctional institution." *Id.* Consequently, Judge Bowes opined that, pursuant to the plain meaning of Section 5123(a.2) of the Crimes Code, Lehman was an "inmate" at the time he unlawfully possessed a controlled substance. *Id.* at 335-36. For these reasons, Judge Bowes would have concluded that the evidence was sufficient to support Lehman's conviction for a violation of Section 5123(a.2), and, therefore, Lehman's claim that his trial and appellate counsel were ineffective for failing to raise a sufficiency-based challenge lacked arguable merit. *Id.* As a result, Judge Bowes would have held that the PCRA court did not err by dismissing Lehman's PCRA petition without a hearing. *Id.*

## II. ISSUE

This Court granted discretionary review to consider the following issue, as stated by the Commonwealth:

> Whether the Superior Court majority erred in concluding that prior counsel rendered ineffective assistance for failing to pursue on appeal a claim that the evidence was insufficient to sustain [Lehman's] conviction under [Section 5123(a.2) of the Crimes Code], because he was not an inmate at the time he unlawfully possessed a controlled substance, where, pursuant to the relevant statute and legislation, he was an inmate?

*Commonwealth v. Lehman*, 289 A.3d 889 (Pa. 2022) (per curiam order). While the Commonwealth's issue itself is expressed in terms of ineffective assistance of counsel and sufficiency of the evidence, resolution of the issue requires us to engage in statutory

interpretation and, therefore, presents a question of law. *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Lab. & Indus.*, 162 A.3d 384, 389 (Pa. 2017). Accordingly, "our standard of review is *de novo*, and our scope of review plenary." *Id.*

## III. DISCUSSION

This appeal requires us to interpret Section 5123(a.2) of the Crimes Code, and, therefore, we are guided in our analysis by the Statutory Construction Act of 1972 (Statutory Construction Act),[13] which provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017) (citing 1 Pa. C.S. § 1921(b)). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa. C.S. § 1921(b)). In this vein, "we should not insert words into [a statute] that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 245 (Pa. 2012). When the statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act[14] and other rules of statutory construction. *See Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 863 A.2d 432, 436 (Pa. 2004) (observing that "other interpretive rules of statutory construction are to be utilized only where the statute at issue is ambiguous"). Moreover, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired

---

[13] 1 Pa. C.S. §§ 1501-1991.

[14] 1 Pa. C.S. § 1921(c).

a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a). "We also presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.'" *Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 245 (Pa. 2019) (quoting 1 Pa. C.S. § 1922(1)-(2)).

Additionally, the General Assembly, in Section 105 of the Crimes Code itself, instructed that "[t]he provisions of [the Crimes Code] shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in [the Crimes Code] and the special purposes of the particular provision involved." 18 Pa. C.S. § 105. This Court has previously stated that the fair import of Section 5123(a) of the Crimes Code is that there are certain places, such as prisons, mental hospitals, buildings appurtenant to prisons and mental hospitals, and land granted to, owned by, or leased by the Commonwealth for the use and benefit of prisoners or inmates, "where it is impermissible to bring certain enumerated substances." *Commonwealth v. Williams*, 579 A.2d 869, 871 (Pa. 1990) (holding that mere possession of controlled substance by prison visitor absent intent to deliver to persons confined therein constitutes violation of Section 5123(a) of Crimes Code). This Court has also previously stated that "[t]he legislative purpose in enacting [Section 5123(a)] was obviously to prevent the acquisition of contraband substances by persons confined in prisons and mental hospitals." *Id.* With respect specifically to Section 5123(a.2) of the Crimes Code, the Superior Court has similarly recognized that "[t]he obvious intent of the [General Assembly] in [that section] . . . is the prevention of inmates obtaining any controlled substance in any amount whatsoever; in other words,

[Section 5123(a.2)] seeks absolute abstinence by inmates." *Commonwealth v. Gerald*, 47 A.3d 858, 862 (Pa. Super.), *appeal denied*, 55 A.3d 522 (Pa. 2012).

With these statutory construction principles in mind, we begin our analysis by reiterating the statute that we are called upon to interpret. Section 5123(a.2) of the Crimes Code provides, in relevant part, that "[a] prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of [S]ection 13(a)(16) of [the Controlled Substance Act]." The parties do not dispute that Lehman unlawfully possessed a controlled substance in violation of Section 13(a)(16) of the Controlled Substance Act. The parties also do not appear to dispute that Lehman was not a "prisoner" for purposes of Section 5123(a.2). We, nevertheless, note, for reasons that will become more apparent later, that Black's Law Dictionary defines "prisoner" as someone who: (1) "is being confined in prison;" (2) "has been apprehended by a law-enforcement officer and is in custody, regardless of whether the person has yet been put in prison;" or (3) "is taken by force and kept somewhere."[15] *Prisoner*, Black's Law Dictionary 1447 (11th ed. 2019).

Thus, the only question that we must decide, and the question upon which we granted review, is whether Lehman was an "inmate" at the time he unlawfully possessed a controlled substance for purposes of Section 5123(a.2) of the Crimes Code, such that his trial and appellate counsel can be found to have provided ineffective assistance for failing to challenge the sufficiency of the evidence supporting his conviction under Section 5123(a.2). Section 5123(e) of the Crimes Code defines "inmate" as "[a] male or female offender who is committed to, under sentence to or confined in a penal or correctional institution." Accordingly, there are three ways that an "offender" becomes an

---

[15] The relevant portions of the Crimes Code do not define the term "prisoner" and Section 1991 of the Statutory Construction Act does not provide a default definition therefor.

"inmate" for purposes of Section 5123(a.2): (1) the offender is committed to a penal or correctional institution; (2) the offender is under sentence to a penal or correctional institution; or (3) the offender is confined in a penal or correctional institution.

The relevant provisions of the Crimes Code do not define "offender," "committed to," "under sentence to," "confined in," or "penal or correctional institution," and Section 1991 of the Statutory Construction Act does not provide default definitions for those terms. We must, therefore, ascertain these words and phrases in accordance with their common and approved usage. *See* 1 Pa. C.S. § 1903(a). Both the parties and the Superior Court incorrectly assume/conclude that Renewal Center is a community corrections center. Section 5001 of the Prisons and Parole Code (Parole Code) defines a "community corrections center" as "[a] residential program that is supervised and operated by the [Pennsylvania Department of Corrections (DOC)]." 61 Pa. C.S. § 5001. A "community corrections facility," on the other hand, is defined as "[a] residential facility operated by a private contractor that . . . houses offenders pursuant to a contract with [DOC]." *Id.* Given that Renewal Center is not operated by DOC but, rather, a private contractor, it meets the definition of a community corrections facility, not a community corrections center. With that being said, the Superior Court properly concluded that Renewal Center qualifies as a "correctional institution" for purposes of Section 5123(a.2), (e). Pursuant to the Parole Code, DOC is authorized to enter into contracts with private contractors to operate corrections facilities within the community for the purpose of housing offenders who have been paroled by the Parole Board.[16] *See* 61 Pa. C.S. §§ 5001, 5002, 5003. Renewal Center is one of those facilities. Additionally, there is no question that Lehman qualifies as an "offender" as that term is

---

[16] Importantly, Chapter 50 of the Parole Code, which addresses community corrections centers and facilities, is set forth within Part III of the Parole Code, which is entitled "Inmate Confinement."

used in Section 5123(a.2), (e) of the Crimes Code. Black's Law Dictionary defines "offender" as "[s]omeone who has committed a crime; esp., one who has been convicted of a crime." *Offender*, Black's Law Dictionary 1299 (11th ed. 2019). More importantly, Section 5003(a) of the Parole Code, which governs those individuals who may be housed at, among other places, community corrections facilities, is entitled "[o]ffenders who may be housed" and specifically uses the phrase "[a]n offender paroled by the [Parole B]oard." 61 Pa. C.S. § 5003(a). Simply put, Lehman would not have been residing at Renewal Center as a condition of his parole from a state sentence of incarceration unless he had been convicted of a crime and had been subsequently released on parole by the Parole Board, and, therefore, Lehman qualifies as an "offender" for purposes of Section 5123(a.2), (e).

The record, however, is wholly devoid of any facts or evidence that would suggest that Lehman was "under sentence to" or "confined in" Renewal Center at the time that he unlawfully possessed a controlled substance. Black's Law Dictionary defines "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer." *Sentence*, Black's Law Dictionary 1636 (11th ed. 2019). Although we do not know the specific facts surrounding Lehman's underlying conviction and subsequent incarceration, the parties agree that Lehman was residing at Renewal Center as a condition of his parole from a state sentence of incarceration. Hence, Lehman was "under sentence to" a state correctional institution for a specified term as a result of his underlying conviction. Lehman's subsequent release to Renewal Center from a state correctional institution was not part of that sentence but, rather, was a condition of his parole. Accordingly, Lehman was not "under sentence to" Renewal Center at the time he unlawfully possessed a controlled substance.

Black's Law Dictionary defines "confinement" as "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained." *Confinement*, Black's Law Dictionary 373 (11th ed. 2019). While not explicitly stated therein, this definition—more precisely its incorporation of the word "restrain"[17]—suggests that there is a compulsory and/or forcible aspect to confinement—*i.e.*, to be "confined in" a certain place requires the individual to have no choice but to remain there at all times. There was no compulsory or forcible aspect to Lehman's residence at Renewal Center. Lehman had the option to serve the remainder of his state sentence of incarceration at a state correctional institution but, instead, chose to accept the Parole Board's terms and conditions that resulted in his mandated residence at Renewal Center. In addition, there is no evidence in the record to suggest that Lehman was required to remain within the four walls of his room at Renewal Center or Renewal Center itself or that he was not able to come and go from Renewal Center subject to certain rules and restrictions. Thus, Lehman was not "confined in" Renewal Center for purposes of Section 5123(a.2), (e).

What we are left to determine, then, is whether Lehman was "committed to" Renewal Center at the time he unlawfully possessed a controlled substance. Black's Law Dictionary defines "commit" as "[t]o send (a person) to prison or to a mental health facility, esp. by court order." *Commit*, Black's Law Dictionary 340 (11th ed. 2019). Arguably, the Parole Board only agreed to parole Lehman from his state sentence of incarceration if Lehman resided, at least initially, at Renewal Center. Stated another way, the Parole Board sent Lehman to reside at Renewal Center as a condition of his parole—*i.e.*, in an official capacity. While Lehman could have refused to agree to the Parole Board's terms

---

[17] Webster's Third New International Dictionary defines "restrain" as, *inter alia*, "to deprive of liberty." *Restrain*, Webster's Third New International Dictionary 1936 (1993). "RESTRAIN is a general term suggesting use of force, pressure, or strenuous persuasion to hold back a person or thing from a course or action or to prevent the action itself." *Id.*

and conditions that resulted in his mandated residence at Renewal Center, to do so would have resulted in his continued incarceration at a state correctional institution. Moreover, while Lehman also could have abandoned his residence at Renewal Center at any time, to do so would have been a violation of the terms and conditions of his parole and could have resulted in his recommitment as a technical parole violator to serve the remainder of his unexpired sentence of incarceration in a state correctional institution. Consequently, the limited facts and circumstances of which we are aware relative to Lehman's residence at Renewal Center establish that Lehman was "committed to" Renewal Center for purposes of Section 5123(a.2), (e) of the Crimes Code. For all of these reasons, we conclude that, pursuant to the plain and unambiguous language of Section 5123(a.2), (e), Lehman was an "inmate" at the time he unlawfully possessed a controlled substance in violation of Section 13(a)(16) of the Controlled Substance Act.

Lehman attempts to avoid this conclusion by relying heavily, if not exclusively, on his status as a parolee. He contends that, "as employed in Section 5123 [of the Crimes Code] and other relevant statutes, 'committed to' necessarily refers to a class of offenders mandated to be held or incarcerated in correctional facilities." (Lehman's Br. at 6.) In so doing, Lehman makes a distinction between parolees, like himself, who are "at liberty" on parole, and pre-release inmates, who are "in official detention or incarceration." (*Id.* at 10.) While he concedes that pre-release inmates may, under current law, no longer be housed at community corrections centers such as Renewal Center,[18] Lehman insists that "the body of case[ ]law in which the courts distinguished 'pre-release inmates' from parolees is significant for purposes of determining the rights and legal status of a parolee." (*Id.*) Lehman also makes a distinction between parolees in good standing and parole

---

[18] *See* 61 Pa. C.S. § 5003(a)(5) (providing that "[i]nmates transferred by [DOC] under Chapter 37 (relating to inmate pre[-]release plans)" may be housed in community corrections centers) (expired July 1, 2013).

offenders "'detained or recommitted to' a community corrections center as a result of a parole violation." (*Id.* at 13 (emphasis omitted) (quoting Section 5006 of the Parole Code, 61 Pa. C.S. § 5006 (providing that "[a]n offender detained or recommitted to a community corrections center . . . as a result of a parole violation shall be deemed to be in official detention under" Section 5121 of Crimes Code, 18 Pa. C.S. § 5121 (relating to escape), but "[a]n offender living in a community corrections center . . . while in good standing on parole shall not")).) In further support, Lehman directs our attention to the Parole Code's use of the word "recommitted," arguing that "[f]or an offender to be 'recommitted' necessarily implies that[,] at some point, specifically, when placed on parole, the offender is no longer 'committed.'"[19] (*Id.* at 14.) In sum, Lehman contends that, because "he was residing at Renewal [Center] voluntarily as a parolee in compliance with an agreed-upon condition of his parole" and he was "at liberty on parole" and, therefore, did not have the right to accrue credit against his sentence while residing there, the Superior Court correctly concluded that it was "impossible for [him] to qualify as an 'inmate' for the purpose of Section 5123."[20] (*Id.* at 24 (quoting *Lehman*, 278 A.3d at 326).)

---

[19] Lehman further argues that, "[a]s stated by the [Superior Court]," Judge Bowes' reliance on *Cornelius* is misplaced "because it involves completely different facts and speaks to points of law that are not now at issue." (Lehman's Br. at 18 (quoting *Lehman*, 278 A.3d at 327).) Given, however, that our decision today is not in any way based upon the Superior Court's prior decision in *Cornelius*, we need not consider Lehman's arguments in this regard.

[20] Lehman additionally maintains that, "[t]o the extent that the definition of an inmate is ambiguous under [Section] 5123(a.2) [of the Crimes Code]," the rule of lenity, nevertheless, requires this Court to construe Section 5123(a.2) in his favor. (Lehman's Br. at 21.) "[U]nder the rule of lenity, an ambiguous penal statute must be strictly construed in favor of the defendant." *Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022). "[T]his principle does not[, however,] require that our Court give the words of a statute their 'narrowest possible meaning,' nor does it 'override the "general principle that the words of a statute must be construed according to their common and approved usage."'" *Id.* (quoting *Commonwealth v. McCoy*, 962 A.2d 1160, 1168 (Pa. 2009)). It (continued…)

In making these arguments, Lehman, like the Superior Court, focuses his attention, not on the plain and unambiguous language of the statute in question—*i.e.*, Section 5123(a.2), (e) of the Crimes Code—but on the Parole Code, the Parole Board's regulations, and certain case law addressing parole revocations and whether a parolee or other offender will receive credit for time served. Quite frankly, whether Lehman was "at liberty on parole" such that he was not entitled to receive credit against his underlying sentence for the time he spent at Renewal Center in the event he was later recommitted as a technical or convicted parole violator is completely irrelevant to whether Lehman was

---

also does not require this Court to disregard the General Assembly's intent. *Commonwealth v. Nevels*, 235 A.3d 1101, 1105 (Pa. 2020).

As explained more fully above, the plain and unambiguous language of Section 5123(a.2), (e) of the Crimes Code establishes that Lehman was an "inmate" at the time he unlawfully possessed a controlled substance in violation of Section 13(a)(16) of the Controlled Substance Act—*i.e.*, he was an offender "committed to" Renewal Center, a correctional institution. Just because the Superior Court reached a different conclusion does not automatically mean that Section 5123(a.2), (e) is subject to more than one *reasonable* interpretation and, therefore, is ambiguous. For all the reasons stated herein, the Superior Court's interpretation—*i.e.,* Lehman's interpretation—of Section 5123(a.2), (e) is not reasonable. Thus, the rule of lenity simply does not apply where, as here, the statutory language is unambiguous—*i.e.*, not subject to two or more reasonable interpretations. *See Gamby*, 283 A.3d at 306; *see also A.S. v. Pa. State Police,* 143 A.3d 896, 905-06 (Pa. 2016) ("A statute is ambiguous when there are at least two reasonable interpretations of the text.").

The dissent suggests that we "want[] to have it both ways" because we "insist[] the statute is unambiguous, thus rendering the rule of lenity inapplicable," but then "root[] around for tools of statutory construction that are only available when a statute is ambiguous." (Dissenting Op. at 6 (Wecht, J., dissenting).) In so doing, the dissent acknowledges that we discuss the fair import and legislative purpose behind Section 5123(a.2) of the Crimes Code "as an instrument to refute Lehman's argument" relative to the fact that he, as a parolee who is "at liberty on parole" and in good standing, should be treated differently than other offenders residing with him at Renewal Center. (*Id.* at 6-7; *See also infra* pp. 19-20.) The dissent seemingly ignores, however, that we discuss the fair import and legislative purpose behind Section 5123(a.2) not in an effort to demonstrate that the statutory language is in fact unambiguous, but rather, to illustrate that our interpretation of Section 5123(a.2)'s plain and unambiguous language is entirely consistent with the General Assembly's purpose to keep controlled substances and other contraband out of correctional institutions and that Lehman's interpretation is not.

an "inmate"—*i.e.,* "committed to" Renewal Center—for purposes of Section 5123(a.2), (e). There is absolutely nothing within the plain and unambiguous language of Section 5123(a.2), (e) that requires parolees to be treated differently from other offenders or that suggests that if a parolee is "at liberty on parole" he cannot also be "committed to" a community corrections facility, such as Renewal Center. We simply cannot and will not insert words or phrases into Section 5123(a.2), (e) that are plainly not there. *See Frazier*, 52 A.3d at 245. Moreover, while we concede that the Parole Code's use of the phrase "recommitment" in the context of a parole violation may necessarily imply that the parolee was previously "committed," the parolee's commitment to a state correctional institution to serve his state sentence of incarceration in connection with his underlying conviction is wholly unrelated to his subsequent commitment to a correctional institution as a condition of his parole or any recommitment to a state correctional institution for a parole violation. In other words, Lehman blindly ignores that an offender may, over the course of his incarceration and parole, be subject to multiple commitments.

Additionally, by suggesting that he, as a parolee who is "at liberty on parole" and in good standing, should be treated differently from other offenders, such as parole violators, residing with him at Renewal Center, Lehman blatantly ignores the fair import and legislative purpose behind Section 5123(a.2) of the Crimes Code. Although this Court has not previously spoken to the fair import of or legislative purposes behind Section 5123(a.2), the fair import of and legislative purpose behind Section 5123(a) rightly extends to Section 5123(a.2). That is, there are certain places—*e.g.,* prisons and mental hospitals—where controlled substances should just not be and where absolute abstinence is required. *See Williams*, 579 A.2d at 871; *see also Gerald*, 47 A.3d at 862. It is also entirely reasonable to include community corrections facilities, such as Renewal Center, as one of those places. To conclude that different types of offenders residing in

the same community corrections facility should be treated differently based on their individual status and circumstances would undermine the General Assembly's purpose to keep controlled substances and other contraband out of correctional institutions.

Furthermore, if we were to adopt Lehman's interpretation of the word "inmate"— and, more specifically, the phrase "committed to"—we would render Section 5123(a.2) of the Crimes Code's use of the term "prisoner" in addition to the term "inmate" and, arguably, the remainder of Section 5123(e)'s definition of "inmate," superfluous. In other words, the only offenders who would likely meet Lehman's definition of "inmate" would be those offenders confined within a state correctional institution, prison, or jail. Indeed, had the General Assembly intended to limit Section 5123(a.2) in such a fashion, it would not have chosen the rather expansive language set forth in Section 5123(a.2), (e). "Prisoner" has to mean something different than "inmate" or the General Assembly would not have chosen to employ both words in Section 5123(a.2). In addition, as detailed above, "committed to," "under sentence to," and "confined in" have separate and distinct meanings: (1) an offender is "under sentence to" a correctional institution when he is placed there following a conviction as a means of punishment; (2) an offender is "confined in" a correctional institution when he is restrained there and has no choice but to remain; and (3) an offender is "committed to" a correctional institution when he is sent there to reside in an official capacity—*e.g.*, as a condition of his parole. While there is some overlap between "under sentence to" and "confined in" and "confined in" and "committed to," each definition has at least some distinguishing feature—*i.e.*, a confinement, unlike a sentence, can occur before an offender is convicted of a crime and a confinement, unlike a commitment, requires some form of restraint. If we were to ignore the General Assembly's use of this rather expansive language, we would not, as we are required to

do, give effect to the entirety of Section 5123(a.2).  *See Berner*, 217 A.3d at 245 (quoting 1 Pa. C.S. § 1922(2)).

In sum, we conclude that Lehman was an "inmate" as that term is used and defined in Section 5123(a.2), (e) of the Crimes Code at the time he unlawfully possessed a controlled substance in violation of Section 13(a)(16) of the Controlled Substance Act, and, therefore, Lehman's trial and appellate counsel were not ineffective for failing to challenge the sufficiency of the evidence supporting his conviction under Section 5123(a.2).  Stated another way, Lehman failed to demonstrate that his counsel provided ineffective assistance because his underlying sufficiency-based claim lacked arguable merit.  Accordingly, we reverse the Superior Court's order.

Chief Justice Todd and Justices Donohue and McCaffery join the opinion.

Justice Mundy files a concurring opinion in which Justice Dougherty joins.

Justice Wecht files a dissenting opinion.